

# SUPREME COURT OF MISSOURI
## en banc

FRANKLIN ALLEN,               )
                                   )
           Respondent,    )
                                   )
v.                                 )     No. SC95358
                                   )
WAYNE BRYERS,          )
           Defendant,      )
                                   )
ATAIN SPECIALTY INSURANCE  )
COMPANY,                 )
                                   )
           Appellant.       )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY**
The Honorable John M. Torrence, Judge

Franklin Allen (hereinafter, "Allen") obtained a $16 million personal injury award against Wayne Bryers (hereinafter, "Bryers") after Bryers' handgun discharged and severely injured him. Allen subsequently filed a Rule 90 garnishment action in aid of execution seeking proceeds from an insurance policy issued by Atain Specialty Insurance Company (hereinafter, "Insurer"), which insured the premises where the shooting occurred.[1] Insurer appeals the garnishment court's judgment and the denial of its motions to intervene and to set aside the underlying tort judgment on the basis of fraud.

---

[1] The insurance policy limit was $1 million.

This Court holds that the garnishment court's rulings on Insurer's motions to intervene and to set aside the judgment were void. Insurer's appeal with respect to those claims is dismissed. This Court further holds that Insurer, who wrongfully refused to defend Bryers, is bound by the result of the underlying tort action, including the findings related to coverage, because it had the opportunity to control and manage the litigation but declined to so do. However, the garnishment court exceeded its authority in ordering Insurer to pay $16 million to Allen because he failed to demonstrate Insurer engaged in bad faith in refusing to defend or settle his claim. Accordingly, Allen is only entitled to receive the $1 million policy limit from Insurer. The remainder of the garnishment court's judgment is affirmed as modified.[2]

**Factual and Procedural History**

John Frank (hereinafter, "Frank") owns the Sheridan Apartments in Kansas City, Missouri. Insurer issued a commercial general liability policy to Frank d/b/a The Sheridan Apartments in 2011 with a $1 million limit for liability claims filed against an insured for personal injury. The policy's definition of "insured" included "employees" but only covered "acts within the scope of their employment by [the insured] or while performing duties related to the conduct of [the insured's] business." The policy applied to an "occurrence," which is defined as "an accident." The policy contained several exclusions. One exclusion was for an "expected or intended injury," which excluded coverage for

---

[2] This Court transferred this case after an opinion by the Missouri Court of Appeals, Western District. Mo. Const. art. V, sec. 10. Portions of the court of appeals' opinion are incorporated without further attribution.

2

"'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured … [but] does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." The policy also contained an exclusion for "assault and battery" by any insured, any employee of the insured, or any other person.

On June 10, 2012, Allen was at the Sheridan Apartments when he was injured severely by the discharge of a handgun carried by Bryers, the property and security manager for the apartment complex, as Bryers was removing Allen from the premises. Allen was rendered a paraplegic from a gunshot that severed his spinal cord. Bryers cooperated with police and several witnesses were interviewed, but no criminal charges were filed against Bryers in connection with the incident.

On August 27, 2012, Allen's attorney sent a letter to Frank advising him that Allen intended to assert a negligence claim against Frank's employee, Bryers. Shortly thereafter, Allen's attorney sent a similar letter to Insurer, informing it of the severity of Allen's injury and Allen's claim against Frank and Bryers.

On September 12, 2012, Insurer sent a letter to Bryers that set forth a full reservation of rights. The letter stated that Insurer's investigation revealed that Bryers, acting as the Sheridan Apartments property manager, was involved in an altercation with Allen that resulted in Allen's injury due to Bryers firing a handgun. Insurer informed Bryers that it believed there may not be coverage for Bryers' action under the policy pursuant to the bodily injury provision and the exclusions for expected or intended injuries, employment-related practices, and assault and battery. Insurer explained it had a right and duty to defend Bryers, but only if the claims were covered by the policy. Insurer reserved its right to deny

3

coverage based on the above-mentioned exclusions. Insurer informed Bryers of the $1 million policy limit and his duty to cooperate in the investigation, handling, and potential settlement of the claim. Insurer concluded the letter by stating, "[Insurer] denies any and all coverage under the policy in connection with the claim described above and furthermore denies that it has any legal obligation to indemnify you in the event a lawsuit is filed and a judgment is entered against you."

On October 22, 2012, Insurer filed a declaratory judgment action in federal district court to determine coverage issues. Insurer maintained the policy did not provide Bryers coverage due to the assault and battery exclusion, the expected or intended injury exclusion, and that the claimed damages did not result from an "occurrence" under the policy.[3] Shortly thereafter, Allen sent Insurer a demand letter seeking the policy limit in exchange for releasing all claims against Bryers and Insurer.

On November 8, 2012, Allen's attorney sent a letter to Insurer stating:

As a result of the filing of the declaratory judgment action, the purported defense of Bryers pursuant to a reservation of rights and the rejection of the demand to settle within policy limits, [Allen has] agreed in principle to enter into a [section] 537.065 agreement[4] with … Bryers and will have the specific agreement executed by next week.

On December 4, 2012, Allen filed a petition for damages against Bryers, alleging "[t]his is a negligence cause of action that arises out of the unintentional and accidental

---

[3] This action was dismissed without prejudice after Allen subsequently filed his own declaratory judgment action in state court.
[4] Section 537.065, RSMo 2000, allows a claimant and a tortfeasor to contract to limit recovery to specified assets or insurance coverage. *See Hunter v. Moore*, 486 S.W.3d 919, 922 n.2 (Mo. banc 2016). All further statutory references are to RSMo 2000.

4

discharge of a weapon that occurred" at the Sheridan Apartments while Allen "was being escorted off and/or physically removed" from the premises by Bryers, "who managed the Sheridan Apartments for the benefit and as the agent of the owner of the Sheridan Apartments … Frank …." The petition stated that Bryers did not intend to discharge the handgun nor did Bryers engage in any act that foreseeably could cause injury to Allen. To the extent Bryers used force in attempting to escort off and/or physically remove Allen from the premises, the petition claimed Bryers used only that amount of force that was reasonably necessary to protect persons and property located in or around the Sheridan Apartments. Allen's petition stated his injury was not caused or contributed to be caused by an assault, battery or an expected or intentional act. The petition further contended Bryers was acting in the scope and course of his employment, and Bryers purchased the handgun at Frank's direction. Allen contemporaneously filed a declaratory judgment action against Bryers and Insurer seeking a declaration that the policy provided coverage for Allen's injury.

Insurer sent correspondence to Bryers on December 14, 2012, notifying Bryers that Allen had filed suit and Insurer retained counsel on Bryers' behalf "with [Insurer's] reservation of rights to deny coverage as set forth by the facts and policy provisions" outlined in its September 12, 2012 letter. Insurer informed Bryers that it filed a declaratory judgment action and it believed several exclusions were present that precluded coverage. Insurer reiterated that it was reserving its rights, reminded Bryers about the cooperation clause, and stated again that the policy may not provide coverage.

5

On January 4, 2013, Insurer's retained counsel filed an answer to Allen's petition on Bryers' behalf. The answer generally denied all of Allen's claims and raised affirmative defenses that Allen's injuries were a result of his own negligence. However, Bryers refused to accept Insurer's reservation of rights defense, and Insurer's retained counsel withdrew from the case. Shortly thereafter, Bryers withdrew the answer filed by retained counsel and consented to the entry of judgment against him consistent with the section 537.065 agreement he executed with Allen.

Insurer filed a motion to intervene on April 5, 2013, requesting intervention for the limited purpose of seeking a stay of the personal injury action until Allen's declaratory judgment action was resolved.[5] Insurer also sought intervention to litigate coverage issues and assert that an inherent conflict of interest existed between Bryers and Insurer that warranted Insurer's intervention. The circuit court overruled Insurer's motion, finding because Insurer denied any and all coverage related to Bryers, it had no authority to contest the terms of the section 537.065 agreement. Insurer did not appeal from this ruling.

The circuit court held a bench trial on Allen's negligence claim on April 18, 2013. Allen presented evidence from an evaluating physician who provided a prognosis and testified about Allen's need for future medical care and services. Allen entered into evidence his deposition testimony and that of his girlfriend. Allen also offered into

[5] Bryers filed a cross-claim in Allen's declaratory judgment action in which he alleged that, as an insured under the policy, he was entitled to a defense and indemnification from Insurer against any damages that arose out of Bryers' attempt to escort Allen from the premises. Insurer removed Allen's declaratory judgment action to federal district court; however, the declaratory judgment action was dismissed after the circuit court entered summary judgment in Allen's favor in the garnishment action.

evidence Bryers' judicial admissions, which admitted the allegations set forth in Allen's petition. Bryers did not object to any of the testimony, the depositions, or the exhibits offered at the bench trial. Bryers did not conduct cross-examination or present any of his own evidence. Allen made a closing argument regarding liability and damages and requested the circuit court award $20 million in damages. The circuit court took the case under advisement, stating it wanted to research the liability issues before entering a judgment.

The circuit court entered its judgment five days later. The circuit court's judgment stated that Frank hired Bryers to assist in managing the Sheridan Apartments. It found one of Bryers' duties included monitoring pedestrian traffic in and out of the premises to keep loitering at a minimum, which required escorting off and/or physically removing persons who Bryers determined were not on the premises properly. The judgment found Frank directed Bryers to acquire and carry a handgun to assist Bryers in performing his duties due to a series of criminal events that occurred at or near the apartment complex.

The circuit court noted that Bryers admitted Allen was injured as a direct result of his negligence and/or improper handling of the handgun, which was discharged when Bryers escorted Allen off of the premises. The circuit court determined Bryers was acting in the course of his employment and carrying out management duties. However, the circuit court found Bryers was under the influence of alcohol at the time the handgun discharged and injured Allen. The circuit court stated that Bryers had no intent to discharge the handgun and the discharge was unintentional, accidental, negligent and/or reckless as a result of Bryers' intoxication and lack of training in the proper handling of a firearm. The

7

circuit court ruled out that the incident involved an assault, a battery or any intentional act and held Allen did not intentionally assault, strike or batter Bryers during the incident. The circuit court determined Bryers' use of force during the course of his employment was reasonable. The circuit court held Allen suffered a permanent and disabling spinal injury and awarded him $16 million in damages.

After the underlying tort judgment became final, Allen filed an Execution/Garnishment/Sequestration Application Order pursuant to Rule 90 and chapter 525. The garnishment action contained the same style and case number as the underlying tort judgment and was presided over by the same circuit judge. The garnishment order listed Allen as the garnishor, Bryers as the debtor, and Insurer as the garnishee. Allen propounded interrogatories to Insurer. Insurer filed its answers and denied that the policy provided indemnity to Bryers. In response, Allen filed exceptions, objections, and denials to Insurer's interrogatory answers. Allen's exceptions alleged Insurer: (1) wrongfully refused to defend Bryers; (2) acted in bad faith when it refused to settle Allen's claim against Bryers; (3) acted in bad faith when it refused to defend Bryers; (4) was bound by the terms of the section 537.065 agreement and the circuit court's underlying tort judgment; and (5) was precluded from asserting policy defenses in a garnishment action.

Insurer denied all of Allen's allegations and raised several affirmative defenses, including: the section 537.065 agreement was a result of fraud or collusion; the underlying tort judgment was unreasonable; the policy was void or subject to rescission; several coverage defenses were present; it had no duty to defend or indemnify Bryers; Bryers violated the cooperation clause; an inherent conflict of interest existed; its due process

8

rights were violated; the appropriateness of several issues being adjudicated as premature; and challenged any potential award of punitive damages for any finding of bad faith on its part in handling Allen's claim.

Allen filed a motion for summary judgment on the garnishment petition, alleging there were no issues of material fact and he was entitled to judgment as a matter of law. Allen's uncontroverted facts mirrored the facts found in the underlying tort judgment. Allen also alleged Insurer engaged in bad faith in failing to perform its duty to defend, duty to settle, and duty to indemnify under the policy. In response, Insurer argued it did not have a full and fair opportunity to litigate the coverage issues in the underlying tort action, and, therefore, it could not be bound by the judicial determinations made in that proceeding. Insurer set forth what it believed to be additional controverted facts, which consisted largely of eyewitness accounts of the altercation between Bryers and Allen that contradicted the facts found in the underlying tort judgment. Insurer also contended that if Allen was entitled to any recovery, it was restricted to the $1 million policy limit because bad faith had not been proven.

On April 25, 2014, almost a year after the underlying tort judgment became final, Insurer filed a second motion to intervene. Insurer also filed a motion to set aside the underlying tort judgment on the basis of fraud. On July 25, 2014, the garnishment court overruled Insurer's motions, entered summary judgment in Allen's favor on his garnishment petition, and ordered Insurer to pay Allen $16 million, stating that "extra-contractual" damages were appropriate because Insurer was suffering the consequences of

9

its breach of its duty to defend and its failure to settle within the policy limit. After Insurer's motions for reconsideration were overruled, Insurer appealed.

## Motions to Intervene

This Court first addresses Insurer's claim that the circuit court erred in overruling its motions to intervene in the underlying tort action because Insurer had an absolute right to intervene given it had an interest in the lawsuit after Bryers entered into the section 537.065 agreement and consented to judgment. Insurer contends it is so situated that the factual determinations in the underlying tort action impaired or impeded its ability to protect its interests because it was not allowed an opportunity to litigate the facts relating to coverage under the policy. The garnishment court overruled Insurer's motion, finding that because Insurer denied "any and all coverage," it had no authority to contest the terms of the section 537.065 agreement.

Rule 52.12(a) governs intervention as a matter of right. Insurer does not maintain that a statute confers it an unconditional right to intervene. In the absence of a statute conferring an unconditional right to intervene, Rule 52.12(a)(2) requires an entity seeking to intervene as a matter of right to file a timely motion and demonstrate: "(1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *Dunivan v. State*, 466 S.W.3d 514, 519 (Mo. banc 2015) (quoting *State ex rel. Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 127 (Mo. banc 2000)). The circuit court's judgment regarding intervention as a matter of right will be affirmed unless there is no substantial evidence to support it, it

10

is against the weight of the evidence, or it erroneously declares or applies the law. *Johnson v. State*, 366 S.W.3d 11, 20 (Mo. banc 2012). Intervention generally should "be allowed with considerable liberality." *Id.* (quoting *In re Liquidation of Prof'l Med. Ins. Co.*, 92 S.W.3d 775, 778 (Mo. banc 2003)).

Insurer filed two motions to intervene. The first motion was filed before the bench trial in the underlying tort action. The circuit court overruled Insurer's motion. Insurer asked for reconsideration of the ruling on the morning of trial, but the circuit court declined relief. Insurer had the right to appeal the circuit court's denial of its application to intervene as a matter of right when the circuit court entered its final judgment in the underlying tort action. *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 401 (Mo. banc 2016). Insurer did not seek any appellate relief from the circuit court's ruling after the judgment was entered and offers no explanation why it failed to do so. Therefore, Insurer abandoned any claim it had regarding the propriety of the circuit court's ruling on its first motion to intervene.

Insurer's second motion to intervene was sought for the purposes of setting aside the judgment on the basis of fraud and was filed almost a year after the underlying tort judgment was entered. Rule 75.01 limits the circuit court's control over a judgment to thirty days after a judgment is entered, provided no authorized after-trial motions are filed. *See* Rule 81.05(a)(1). Rule 75.01 states the circuit court "retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." *Id.* There is no dispute the underlying tort judgment was final,

11

none of the parties filed authorized after-trial motions, and none of the parties sought an appeal within the time frame contemplated by Rule 75.01. Hence, Insurer's second motion to intervene was filed untimely.

Insurer also could not file an authorized after-trial motion because it was not a party to the action. "After the expiration of the 30 days provided by Rule 75.01, the trial court is divested of jurisdiction, unless *a party* timely files an authorized after-trial motion." *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 468-69 (Mo. banc 2011). "Following divestiture, any attempt by the trial court to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void." *Id.* at 469. After the underlying tort judgment became final, the circuit court no longer had the authority to rule upon Insurer's second motion to intervene. Accordingly, any ruling on Insurer's untimely, unauthorized motion was void.

Finally, in its reply brief, Insurer raised the additional argument that it was entitled to intervene because its right to do so ripened when it was called on to indemnify Bryers and pay for the underlying tort judgment. *See Ballmer v. Ballmer*, 923 S.W.2d 365, 368 (Mo. App. W.D. 1996) (holding that an insurer has an interest in the underlying action for purposes of intervention "when a claim for potential indemnity becomes a demand for actual indemnity"). However, Insurer fails to address the timeliness of its filing and provide any caselaw to support its argument that filing more than a year after the underlying tort judgment became final vested the circuit court with authority to rule upon the motion. Because the circuit court had no authority to rule upon this motion and Insurer cannot appeal a void order, *Williston v. Mo. Dep't of Health & Senior Servs.*, 461 S.W.3d 867,

870 (Mo. App. W.D. 2015), this Court dismisses the portion of Insurer's appeal addressing this issue.

## Motion to Set Aside Underlying Tort Judgment

Relatedly, Insurer argues the garnishment court erred in overruling its motion to set aside the underlying tort judgment because it was a result of fraud, collusion, and misrepresentation due to Allen and Bryers entering into a section 537.065 agreement. Insurer claims the section 537.065 agreement required Bryers to consent to judgment, allowed Allen and Bryers to stipulate to untrue facts, and presented these stipulations to the circuit court with the intent that the circuit court rely upon them to foreclose Insurer from an opportunity to litigate the facts relating to its coverage issues under the policy.[6]

Rule 74.06(b)(2) provides that the circuit court may relieve a party or the party's legal representative from a final judgment or order for fraud, misrepresentation, or other misconduct of an adverse party. Rule 74.06(c) requires that the motion to set aside be filed not more than one year after the judgment or order was entered. A circuit court's ruling on a Rule 74.06(b) motion is in the nature of an independent proceeding and is appealable. *In re Marriage of Hendrix*, 183 S.W.3d 582, 587 (Mo. banc 2006). The circuit court's ruling on a motion to set aside under Rule 74.06(b) is reviewed for abuse of discretion. *Bate v. Greenwich Ins. Co.*, 464 S.W.3d 515, 517 (Mo. banc 2015).

---

[6] The section 537.065 agreement was not entered into the record in any of the underlying proceedings. This Court cannot speak to the date of execution or the terms of the agreement, specifically whether it confines the scope of liability to the policy limits. However, the record reflects that Allen submitted the section 537.065 agreement to the circuit court for an *in camera* review prior to trial.

13

The underlying tort judgment was entered on April 30, 2013. Insurer timely filed its motion to set aside that judgment, under Rule 74.06(b), on April 25, 2014. However, the provisions of Rule 74.06(b) are limited to parties. *State ex rel. Wolfner v. Dalton*, 955 S.W.2d 928, 930 (Mo. banc 1997). Insurer failed to secure intervention in the underlying tort action on two separate occasions and never became a party to the suit. Hence, Insurer was not a "party" entitled to bring a Rule 74.06(b) motion. The circuit court was without authority to grant any relief on that motion. *Id.* Accordingly, this Court dismisses that portion of Insurer's appeal asserting the circuit court erred in its ruling on this motion. *See Williston*, 461 S.W.3d at 870.[7]

## Garnishment Judgment

Insurer brings several points challenging the propriety of the garnishment court's entry of summary judgment in Allen's favor on his garnishment petition. This Court addresses these claims out of the order presented by Insurer for the sake of clarity.

### *Standard of Review*

This Court reviews a grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Strake v. Robinwood West*

---

[7] Even if Insurer could bring the Rule 74.06(b) motion as a "party," the record reflects Allen filed a motion to strike Insurer's motion to set aside the judgment and Insurer filed no responsive pleading, rendering Allen's motion unopposed. Again, Insurer offers no explanation as to why it failed to respond to Allen's motion to strike, which could have given the garnishment court an opportunity to rule upon the merits of Insurer's motion, provided it was a party to the underlying tort judgment.

14

*Cmty. Improvement Dist.*, 473 S.W.3d 642, 644 (Mo. banc 2015). "The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support the claimed right to judgment." *Copeland v. Wicks*, 468 S.W.3d 886, 889 (Mo. banc 2015). The record is reviewed in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin.*, 854 S.W.2d at 376.

### Garnishment

"There are two avenues for a judgment creditor to collect money from an insurance company: (1) a traditional garnishment under section 525.240 and Rule 90 or (2) a direct action against the insurer authorized by section 379.200." *Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. banc 2002). Allen filed a traditional garnishment pursuant to Rule 90.[8]

---

[8] Traditional garnishment and an equitable action filed pursuant to section 379.200 are not mutually exclusive remedies. *Johnston*, 68 S.W.3d at 403. Sections 379.195 and 379.200 govern what is referred to as "equitable garnishment" actions. These statutes provide that an injured third party may seek satisfaction of a final judgment for a loss by reason of personal injury, death, or damage to property against an indemnity or liability insurer. In an equitable garnishment action, which is brought directly against the insurer, the plaintiff must prove that a judgment was obtained against an insurance company's insured during the policy period and that the injury is covered by the policy. *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015). Generally, recovery under section 379.200 is limited to the policy limits ("provided for in the contract of insurance"), and a judgment creditor cannot collect amounts in excess of the policy, excluding interest, because permitting additional recovery would disregard the statute and would act as a repeal of the limitations set therein. *Linder v. Haweye-Security Ins. Co.*, 472 S.W.2d 412, 415 (Mo. banc 1971). Further, an unsuccessful litigant is not liable for attorney's fees in an equitable garnishment action. *Johnston*, 68 S.W.3d at 404. However, an equitable garnishment plaintiff may assert additional claims that go beyond the mere satisfaction of the underlying judgment for the contractual limits such as an insurer's alleged bad faith in refusing to defend or settle the claim that, if proven, would permit recovery beyond the insurance policy limits. *See*, *e.g.*, *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700 (Mo. banc 2011).

"Garnishment is purely a creature of statute in derogation of the common law." *Moore Auto. Grp., Inc. v. Goffstein*, 301 S.W.3d 49, 53 (Mo. banc 2009) (quoting *State ex rel. Eagle Bank & Trust Co. by Roderman v. Corcoran*, 659 S.W.2d 775, 777 (Mo. banc 1983)). "Garnishment in aid of execution is an incidental remedy whereby a plaintiff seeks to collect the judgment by reaching the defendant's property in the hands of a third party." *Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949, 953 (Mo. App. E.D. 1984). "[S]trict compliance with all of the requirements formerly imposed by statutes and now enjoined by civil rules is essential to confer and support jurisdiction in a garnishment proceeding." *Id*.

The procedure for garnishment in aid of execution is set forth in Rule 90.07. Interrogatories are served on the garnishee simultaneously with the summons and writ of garnishment. Rule 90.07(a)(3). The garnishee is required to file and serve verified answers to the garnishor's interrogatories. Rule 90.07(b). Thereafter, the garnishor files any exceptions to the interrogatory answers, asserting any objections to the answers and all grounds upon which recovery is sought against the garnishee. Rule 90.07(c). The exceptions to the interrogatory answers stand in place of a petition, must contain the grounds upon which recovery is sought, and frame the issues to be determined by the garnishment court. *Landmark Bank*, 680 S.W.2d at 953. The garnishee may file a response to the exceptions. Rule 90.07(d).

### Opportunity to Litigate Coverage

Insurer argues the garnishment court erred in sustaining Allen's motion for summary judgment because Insurer was entitled to an opportunity to litigate the facts

16

relating to the coverage issues under the policy. Insurer claims the garnishment court erroneously relied upon factual determinations in the underlying tort action to determine coverage under the policy. Specifically, Insurer points to facts regarding assault, battery, intentional acts, and the facts related to the course and scope of Bryers' employment that Insurer maintains negates coverage. Allen responds that Insurer waived its opportunity to defend in the underlying tort action when it refused to defend Bryers and filed a declaratory judgment action challenging coverage before Allen's petition was filed.

An insurer's duty to defend is broader than its duty to indemnify. *Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 793 (Mo. banc 2015). The duty to defend arises only when there is a possibility or potential for coverage at the outset of the case. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. banc 2014). The duty to defend is determined by comparing the insurance policy language with facts: "(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." *Id.* at 553. "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 265 n.10 (Mo. banc 2013) (quoting *McCormack Baron Mgmt. Serv., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170-71 (Mo. banc 1999)).

> [E]ven if the plaintiff bringing a claim against the insured initially pleads the 'wrong' cause of action, or one that is likely to be subject to a motion to dismiss, if, at the time the claim is made, facts are known to the insurer or could reasonably be ascertained by the insurer that would potentially put the claim within the scope of the policy, the insurer must defend the insured.

17

*Fostill Lake Builders, LLC v. Tudor Ins. Co.*, 338 S.W.3d 336, 347 (Mo. App. W.D. 2011).

"To extricate itself from the duty to defend the insured, the insurance company must prove that there is ***no possibility*** of coverage." *Truck Ins. Exch. v. Prairie Framing*, *LLC*, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) (emphasis in original).

Insurer's initial letter to Bryers acknowledged Bryers was acting as Frank's property manager at the time of the incident. Accordingly, Bryers was Frank's employee and, therefore, was an insured as defined under the terms of the policy. Insurer's initial letter, which it sent prior to receiving Allen's petition, also made clear that it "denie[d] any and all coverage under the policy in connection with the claim" and denied it had any legal obligation to indemnify Bryers in the event Allen filed suit and obtained a judgment. Insurer maintained its reservation of rights and denial of coverage even after it received notice that Allen intended to file a negligence claim. Before Insurer received Allen's petition, which specifically averred facts that would give rise to a potential claim within the policy's coverage, it filed a declaratory judgment action to determine coverage issues.

An insurer may not reserve the right to disclaim coverage and at the same time insist upon controlling the defense. *Butters v. City of Independence*, 513 S.W.2d 418, 425 (Mo. banc 1974). Further, "[i]nsurers cannot force insureds to accept a reservation of rights defense." *Ballmer*, 923 S.W.2d at 369. It is well-settled that an insured has the right to reject a reservation of rights defense. *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 527 (Mo. banc 1995). Shortly after Allen's petition was filed, Bryers exercised his right to reject Insurer's reservation of rights defense. "Should the insured reject the defense, the insurer then has one of three options: (1) ... represent the insured

18

without a reservation of rights defense; (2) ... withdraw from representing the insured altogether; or (3) ... file a declaratory judgment action to determine the scope of [the] policy's coverage." *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 765 (Mo. banc 2009) (quoting *Truck Ins. Exch.*, 162 S.W.3d at 88). Insurer filed a declaratory judgment action months before Bryers rejected its reservation of rights defense, and, later Insurer's retained counsel withdrew representation.

An insurer's decision to file a declaratory judgment action instead of foregoing its reservation of rights defense is a risky one. *Ballmer*, 923 S.W.2d at 369; *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 481 (Mo. App. W.D. 1992). By filing a declaratory judgment action, the insurer's decision is treated as a refusal to defend, and, if determined to be "unjustified, the insurer is treated as if it waived any control of the defense of the underlying tort action." *Ballmer*, 923 S.W.2d at 369. In this case, Insurer wrongfully refused to defend Bryers. Bryers, acting as Frank's employee at the time of the incident, was an insured under the terms of the policy. Insurer had notice that Allen intended to bring a negligence claim and Allen later filed a petition seeking damages based on negligence. Instead of defending Bryers, Insurer asserted a full reservation of rights, denied coverage, and filed a declaratory judgment action in federal district court before Allen's petition was filed.

Once an insurer unjustifiably refuses to defend or provide coverage, the insured may enter into an agreement with the plaintiff to limit his or her liability to the insurance policy limits. *Schmitz*, 337 S.W.3d at 710. Bryers executed the section 537.065 agreement with Allen only after Insurer denied any and all coverage, filed its declaratory judgment action,

19

and refused to settle Allen's claim. As *Schmitz* explained, "[The insurer] cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." *Id.* (quoting *Rinehart v. Anderson*, 985 S.W.2d 363, 371 (Mo. App. W.D. 1998)). Under these circumstances, this Court holds Insurer had an opportunity to manage and control the underlying tort action but declined to do so.

### Bound by the Result of the Litigation

Insurer next contests the extent to which it is bound by the underlying tort judgment. "Where one is bound to protect another from liability, he is bound *by the result of the litigation* to which such other is a party, provided he had … opportunity to control and manage it." *Drennen v. Wren*, 416 S.W.2d 229, 234 (Mo. App. Spring. Dist. 1967) (emphasis in original). *Drennen* explained to what extent the insurer is bound by the result of underlying litigation:

> [T]he first judgment is conclusive on the plaintiff and defendant, and hence the garnishee, as to defendant's liability to plaintiff on the tort cause of action in the amount of the verdict rendered. Nevertheless, the judgment in the tort action is not conclusive on the parties in the garnishment suit as to facts not actually litigated in the first action or to facts that were merely evidentiary or … inferentially involved in the first.

*Id*. at 236. Moreover, an underlying judgment "is conclusive in a later action on the indemnity contract as to those issues and questions necessarily determined in the underlying judgment." *Assurance Co. of America v. Secura Ins. Co.*, 384 S.W.3d 224, 233 (Mo. App. E.D. 2012). Hence, "[w]here the insurer had the opportunity to defend the insured but wrongfully refused to do so, '[t]he insurer is precluded from relitigating any

20

facts that actually were determined in the underlying case and were necessary to the judgment.'" *Id*. "The facts decided in the underlying action most often will determine whether there is a duty to indemnify." *Id*.

Insurer argues that many of the facts found in the underlying tort judgment were not essential, material, or necessary to reaching the issue of liability and damages and it should not be bound by those findings in the garnishment proceeding. This Court disagrees. Allen could not have prevailed on his negligence claim had the evidence established that Bryers acted intentionally, committed an assault or battery, or used reasonable force during the course and scope of his employment in attempting to remove Allen from his employer's premises. Insurer, who wrongfully refused to defend its insured, cannot now complain that these necessary findings concurrently resolved several questions regarding coverage under the policy. Consequently, Insurer is bound by the result of the underlying tort action and the factual findings as they dovetail into resolving coverage issues under the policy.

### Inherent Conflict of Interest

Alternatively, Insurer argues an inherent conflict of interest exists between it and Bryers that made it legally impossible for Insurer to litigate the coverage issues in the underlying tort action. To support its conflict of interest argument, Insurer relies on *Cox v. Steck*, 992 S.W.2d 221 (Mo. App. E.D. 1999)' and *James v. Paul*, 49 S.W.3d 678 (Mo. banc 2001), arguing these cases are directly on point. This Court disagrees, finding both cases factually distinguishable.

In *Cox*, the victim's explicitly raised allegations of assault in his petition provided the insurer with a valid basis upon which to assert a reservation of rights or to deny a

defense.[9] In the instant case, at no point did Allen claim or allege that Bryers' actions were anything other than negligent, unintentional, or accidental, thus bringing his claim within the possibility for coverage under the policy. While Insurer did not agree with Allen's assertions, it was not put into a position in which an inherent conflict of interest would arise had Insurer chosen to defend Bryers. Further, in *James*, the insured was charged criminally with first-degree assault and entered into a guilty plea, effectively conceding that his actions were intentional and willful, resulting in no coverage under the homeowner's policy.[10] By contrast, in this case, the police conducted an investigation and interviewed

---

[9] In *Cox*, the victim filed suit against the insured after being injured in a bar fight, alleging assault, and, in the alternative, negligence. The insurer defended the insured under a reservation of rights and denied policy coverage for the claim. The insured and victim entered into a section 537.065 agreement that the insured "negligently injured" the victim. After a brief trial, the circuit court entered judgment finding the insured negligently injured the victim and awarded damages. *Id*. In the victim's garnishment action, the insurer denied coverage, arguing the insured engaging in a "willful and malicious act" that resulted in an "expected or intended" bodily injury. The insurer also asserted it could not have defended the insured in the underlying action because there was an inherent conflict of interest between the insurer and the insured. *Id*. at 222-23. The garnishment court entered judgment in the victim's favor. The court of appeals reversed. *Id*. at 226. The court held that collateral estoppel was not met because the insurer's interests were not so closely related to the insured that the insurer would be considered to have had its day in court. *Id*. at 224. The court explained that the insured's theory was that the victim's injury was accidental, while the insurer maintained that liability, if any, arose because the injury was intended or the result of a willful or malicious act, which was not covered under the policy. The court found these theories were inherently conflicting, thus resulting in the insurer not having a full and fair opportunity to litigate the issues in the underlying action. *Id*. The court determined that the insurer's presence in the underlying action would have created an inherent conflict of interest, and this conflict was an exception to the general rule that an insurer that elects not to defend an insured under a contractual duty to do so is bound by the underlying judgment. *Id*. at 225-26.

[10] In *James*, the insured stabbed his estranged wife's paramour at the insured's home. *James*, 49 S.W.3d at 680. The insured notified the insurer of a potential claim and sought coverage for any claims the victim may assert. *Id*. at 681. The insurer denied coverage. The victim later filed suit against the insured, alleging the insured acted carelessly,

several witnesses, but, ultimately, Bryers was not charged with or convicted of any criminal offense related to this incident. Insurer did not have any prior judicial adjudication upon which to rely that would justify denying coverage as the insurer in *James* did. This case does not present the same inherent conflict of interest that was present in *Cox* or *James*. Insurer and Bryers did not have an inherent conflict that prevented Insurer from participating in the underlying tort action.[11]

---

negligently, and was "incapacitated and unable to control the nature of conduct" at the time of the stabbing. *Id*. The insurer declined to defend, and the parties entered into a settlement agreement under which the insured would waive a jury trial, not present any evidence, and would limit recovery to the terms of the policy. *Id*. The circuit court entered judgment in the victim's favor. *Id*. The victim filed a garnishment action against the insurer, who continued to deny coverage. The circuit court entered summary judgment in the victim's favor, finding that coverage issues were resolved in the underlying proceeding. *Id*. at 681-82. The insurer appealed. This Court reversed, agreeing with the insurer's argument that insured's guilty plea resolved the question of whether his actions were intentional or willful, resulting in no coverage under the policy. *Id*. This Court explained that "where the insured made a judicial admission as part of a prior judicial determination in a criminal case that the insured's conduct was intentional," the general rule equitably estopping an insurer from raising coverage defenses after refusing to defend did not apply. *Id*. at 689. Generally, the doctrine of equitable estoppel applies when the insurer's refusal is unjustified under the circumstances; however, because the insurer justifiably relied on the insured's guilty plea to determine the policy afforded no coverage, the insurer had no duty to defend. *Id*. Moreover, for the insurer to have defended the insured on the ground that his conduct was intentional rather than negligent would have created an irreconcilable conflict with the insured. *Id*. Therefore, this Court held the insurer was not prevented from asserting the absence of coverage as a defense in the garnishment action. *Id*.

[11] This Court notes that the answer filed by Insurer's retained counsel asserted an affirmative defense that Allen's own comparative fault and negligence caused his damages, thus further demonstrating that Insurer had defenses available to it and Bryers that were not in conflict. *See also*, *Zipkin v. Freeman*, 436 S.W.2d 753, 762-63 (Mo. banc 1968) (holding no conflict of interest foreclosed the insurer's duty to defend when the insurer could have litigated certain damage issues even though it believed its position was inconsistent with its insured).

*Insurer's Affirmative Defenses*

Insurer next argues the garnishment court erred in entering summary judgment in Allen's favor because he failed to establish that each of Insurer's affirmative defenses failed as a matter of law. Insurer pleaded defenses of fraud, collusion, rescission, void policy, violation of the cooperation clause, and others to defeat summary judgment. Insurer argues Allen's summary judgment motion failed to address any of these affirmative defenses, much less establish material facts entitling him to judgment as a matter of law with respect to each defense.

Many of Insurer's affirmative defenses are a second attempt to litigate coverage under the policy. Insurer had an opportunity to litigate coverage and chose not to so when it wrongfully refused to defend Bryers, filed a declaratory judgment action, and took no steps to protect its interests when it failed to appeal the first motion for intervention. Accordingly, Insurer is bound by the results of the underlying tort judgment regarding the necessary findings that addressed Insurer's substantive policy defenses, such as the assault, battery, expected or intentional act, and employment-related practices.

In Insurer's answer to Allen's exceptions, it alleged Frank misrepresented facts relating to security at the Sheridan Apartments, which Insurer believes subjected the policy to rescission and/or rendered the policy void. Insurer bears the burden of proving Frank made a material misrepresentation in his application for insurance. *Smith ex rel. Stephan v. AF & L Ins. Co.*, 147 S.W.3d 767, 774 (Mo. App. E.D. 2004). Insurer must:

> demonstrate that a representation is both false and material in order to avoid
> the policy when (1) the representation is warranted to be true, (2) the policy
> is conditioned upon its truth, (3) the policy provides that its falsity will avoid

24

the policy, or (4) the application is incorporated into and attached to the policy. Otherwise, the insurance company must demonstrate that the representation in the application was false and fraudulently made in order to avoid the policy.

*Id.* (quoting *Cont'l Cas. Co. v. Maxwell*, 799 S.W.2d 882, 888 (Mo. App. W.D. 1990)). Insurer's affirmative defense and its suggestions in opposition to Allen's motion for summary judgment fail to plead any factual basis for any of these scenarios. These conclusory statements do not meet Insurer's burden of proving the policy was void due to a material misrepresentation.

With respect to fraud and collusion, Insurer points to Bryers' deposition obtained during the garnishment proceeding. Bryers asserted his Fifth Amendment privilege to remain silent throughout the questioning about the terms of his employment, the incident, and the circumstances surrounding the section 537.065 agreement, and the trial. "A party seeking the benefit of a negative Fifth Amendment inference in a civil case must … make an affirmative showing to support its right to judgment and cannot rely exclusively upon the other party's refusal to testify." *Johnson v. Missouri Bd. of Nursing Adm'rs*, 130 S.W.3d 619, 632 (Mo. App. W.D. 2004). Hence, while the fact-finder in a civil case is permitted to draw an adverse inference from a defendant's assertion of his or her Fifth Amendment right to remain silent, judgment may not be based on the defendant's silence alone, without requiring the plaintiff to present a *prima facie* case. *Id.*

The record demonstrates that, beyond Bryers' refusal to testify during the deposition, Insurer set forth only conclusory allegations that Allen and Bryers engaged in fraud or collusion when entering into the section 537.065 agreement. After Insurer asserted

25

a reservation of rights, denied coverage, and sought a declaratory judgment action, Bryers was free to enter into a section 537.065 agreement to limit his exposure to liability. *Schmitz*, 337 S.W.3d at 710. Although the section 537.065 agreement was not entered into the record, the circuit court judge who presided over the underlying tort action examined the agreement *in camera* prior to the bench trial and later presided over the garnishment proceeding. Moreover, the damage award correlated to Bryers' liability and Allen's extensive injuries and need for future medical care. Allen suffered a catastrophic injury at a young age that rendered him a paraplegic. Allen's attorney initially requested $20 million in damages; however, the circuit court awarded $16 million after stating it would conduct additional research about liability. The circuit court's award does not demonstrate it was complicit in any alleged fraudulent or collusive scheme to bilk Insurer for an excessive damages award.

Finally, turning to Bryers' alleged breach of the policy's cooperation clause, "if the garnishee seeks to escape coverage solely because of an alleged breach of a policy provision requiring the insured to cooperate with the insurer, the burden is upon the insurer to prove facts that would make that provision relieve the insurer from liability." *Johnston*, 68 S.W.3d at 401. Insurer cannot meet that burden because this Court has held Insurer wrongfully refused to defend Bryers. The legal consequences of Insurer's breach of contract includes Insurer's loss of the contractual right to demand that Bryers comply with certain prohibitory and affirmative policy provisions, including the duty to cooperate.

*Truck Ins. Exch.*, 162 S.W.3d at 89. The garnishment court did not err in entering summary judgment in Allen's favor despite Insurer's affirmative defenses.[12]

### *Excessive Garnishment Award*

Insurer next contends the garnishment court exceeded its authority and erred in awarding Allen $16 million in damages. First, Insurer argues relief under a statutory garnishment action in aid of execution is limited to the collection of money that the garnishee has a present obligation to pay the debtor and Insurer had no present obligation to pay Allen. This argument fails because this Court ruled that Insurer is bound by the result of the underlying tort judgment. Bryers was Insurer's insured under the policy and found to have harmed Allen negligently during the course and scope of his employment while using reasonable force to remove Allen from his employer's property. Accordingly, Insurer has a present obligation to pay Allen for the damages he suffered by way of Bryers' negligence that was covered by the policy at the time of the occurrence.

Next, Insurer maintains that Allen's claim for $16 million was based upon separate independent claims of breach of contract and/or bad faith. Insurer contends a statutory garnishment action does not allow for the litigation of separate claims for damages by the garnishor, and Bryers never filed an independent action asserting tort or breach of contract

---

[12] Because Insurer had an opportunity to manage and control the underlying tort action and was bound by the necessary findings as they related to coverage, this Court summarily denies Insurer's Point VI, which alleges there are genuine issues of material fact as to: (1) the existence of the policy; (2) coverage for the claimed loss under the policy; (3) Insurer's opportunity to defend the underlying tort action; and (4) Insurer's affirmative defenses including fraud, collusion, and Bryers' violation of the cooperation clause.

claims that would expose Insurer for damages beyond the $1 million policy limit. Insurer argues that "extra-contractual liability" based upon these types of claims is not appropriate in a garnishment action. Insurer cites *Landmark Bank* to support its argument.

In *Landmark Bank*, a traditional garnishment action, the issues were whether the garnishee possessed or controlled any of the debtors' funds and whether the garnishee breached its fiduciary duty to the garnishor if it disbursed those funds. *Landmark Bank*, 680 S.W.2d at 952. The garnishment court found the breach of fiduciary duty allegation exceeded the scope of a garnishment action because the garnishment statute was "not broad enough to include the power to bring suit to recoup money previously paid out under the direction of the … debtor." *Id*. The court of appeals affirmed the circuit court's judgment, explaining that "[a]s an incidental remedy, garnishment was never intended to enable a plaintiff to enforce claims held by him directly against the garnishee." *Id*. at 953. The court noted that the garnishor attempted to bring a separate and independent action against the garnishee for an alleged breach of fiduciary duty within the narrow confines of a garnishment proceeding. *Id*. at 954. In rejecting the garnishor's attempt to adjudicate these claims in a garnishment proceeding, the court stated, "Neither [c]hapter 525 … nor Rule 90 provide for an action by a garnishor against a garnishee for punitive damages." *Id*. The court concluded, "We cannot permit [a] garnishor to substitute the purely incidental remedy of garnishment for an action alleging breach of fiduciary duty and requesting punitive damages." *Id*.

*Landmark Bank* is distinguishable because it involved an attempt by the garnishor to collect directly on a breach of fiduciary duty claim allegedly owed by the garnishee to

28

the garnishor, not the judgment debtor. The garnishor was not attempting to collect on any liability owed to the debtor, but, rather, was seeking to collect on a fiduciary duty claim purportedly owed to itself. That is not the case here.

Allen filed exceptions to Insurer's answers to his interrogatories, wherein he alleged, *inter alia*, that Insurer: (1) wrongfully refused to defend Bryers; (2) acted in bad faith when it refused to settle Allen's claim; and (3) acted in bad faith when it refused to defend Bryers.[13] The garnishment court held Insurer unjustifiably refused to defend Bryers and, therefore, was legally bound to indemnify Bryers under the terms of the section 537.065 agreement. Further, the garnishment court rejected Insurer's argument that it could not be held liable to pay "extra-contractual damages" or damages in excess of the policy limit absent a finding of bad faith. The garnishment court cited *Columbia Casualty* for the proposition that Insurer was suffering the consequences of the breach of its duty to defend and its failure to settle within the policy limits. Insurer contends the garnishment court erroneously interpreted *Columbia Casualty*.

In *Columbia Casualty*, an insurer that refused to defend its insured and refused to participate in settlement negotiations contested its liability for damages that were agreed to through a settlement between the insured and a class of injured plaintiffs. *Columbia*

---

[13] After Allen filed the garnishment action, he and Bryers entered into a stipulation wherein Bryers assigned any and all interest he may have in the policy to Allen. This included granting Allen the right to assume and prosecute any claims Bryers may have had against Insurer for its failure to defend and indemnify Bryers, the right to defend or prosecute any claims that Bryers may have for determination of Bryers' rights under the policy, and the right to seek declaration from a court to determine Insurer's liability to defend and indemnify Bryers for the damages suffered by Allen.

*Cas. Co.*, 411 S.W.3d at 258. After the settlement was reached, the class sought to collect on the settlement judgment via a garnishment action against the insurer. *Id*. at 263. The insurer filed a declaratory judgment action to litigate coverage issues. *Id*. The circuit court found the insurer owed the insured a duty to defend because the class' claims were covered under the policy. *Id*. The circuit court then ruled that the insurer had a duty to indemnify the insured for the full settlement, plus interest, because the insurer acted unreasonably and in bad faith. *Id*. The insurer appealed from the declaratory judgment action. *Id*.

This Court affirmed the circuit court's judgment, rejecting the insurer's argument that it was only obligated to indemnify the insured for the policy limits and not the full amount of the settlement because no bad faith allegations were raised in that case. *Id*. at 273. This Court stated that because the insurer wrongfully refused to defend the insured, the insurer put itself in the position to indemnify the insured for all damages flowing from its breach of the duty to defend. *Id*. "[The insurer] simply is suffering the consequences of its breach of its duty to defend and its failure to settle within the policy limits." *Id*. This Court concluded that the insurer could not "benefit from its wrongful refusal to assume control of the proceedings" and could not avoid liability for the settlement judgment entered in that case. *Id*. at 274.

This Court agrees that *Columbia Casualty* is distinguishable and does not support the garnishment court's finding that Insurer is liable for the entire amount of the underlying tort judgment. Notably, *Columbia Casualty* was a declaratory judgment action where several specific coverage issues were at issue, not a traditional garnishment case. Second, the declaratory judgment court explicitly found the insurer engaged in bad faith when it

30

both refused to defend and to settle the claim. The bad faith determination was not challenged on appeal. Finally, because the insurer acted in bad faith for refusing both to defend and to settle, the insurer was liable for the entire amount of the judgment beyond the policy limits. Here, while the garnishment court found Insurer refused to defend and refused to settle, it made no finding of bad faith.

This Court has found Insurer wrongfully refused to defend Bryers in the underlying tort action. "[A]n insurance company is liable to the limits of its policy plus attorney fees, expenses and other damages where it refuses to defend an insured who is in fact covered." *Landie v. Century Indemnity Co.*, 390 S.W.2d 558, 562 (Mo. App. K.C. Dist. 1965).[14] "This is true even though the company acts in good faith and has reasonable ground[s] to believe there is no coverage under the policy." *Id.* Moreover, "bad faith requires more than just an erroneous denial of coverage." *Shobe v. Kelly*, 279 S.W.3d 203, 211-212 (Mo. App. W.D. 2009).

This Court has described bad faith as "the intentional disregard of the financial interest of [the] insured in the hope of escaping the responsibility imposed upon [the insurer] by its policy." *Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750, 754 (Mo. 1950). Examples of bad faith include: failing to investigate fully a third-party claimant's injuries or recognize their severity; ignoring that a verdict could exceed policy limits; refusing to consider a settlement offer; and not keeping an insured informed of settlement offers or the

---

[14] *Landie* explained the insured's scope of recovery upon the insurer's breach of its contractual duty to defend includes "the limits of the policy plus attorney fees, costs, interest and any other expenses incurred by the insured in conducting the defense of the suit which was the obligation of the company to perform under the contract." *Id.* at 562.

risks of an excess judgment. *Shobe*, 279 S.W.3d at 211. Whether an insurer acted in bad faith is a generally a fact question for the jury. *Zumwalt*, 228 S.W.2d at 754. Liability cannot be predicated upon negligence, but, rather, there must be a showing of a lack of good faith. *Id*. at 755.

While it is clear Insurer wrongfully refused to defend Bryers, the garnishment court did not make any explicit finding that Insurer acted in bad faith. Consequently, the garnishment court exceeded its authority in awarding Allen the full amount of the underlying tort judgment because Allen was only entitled to the $1 million policy limits per *Landie*. Accordingly, the garnishment court erred in entering judgment in excess of the $1 million policy limit.[15]

Rule 84.14 permits this Court to enter the judgment as the trial court ought to have entered, rendering remand unnecessary. *Hunter*, 486 S.W.3d at 922. The garnishment court's judgment awarding Allen $16 million plus interest is modified to award Allen $1 million, which constitutes the insurance policy limit, plus interest thereon.

---

[15] Given the disposition of this claim, this Court need not address Insurer's additional arguments contained in Point III (questions of fact remain regarding its duty to defend) and Point IX (due process arguments related to the excessive award).

## Conclusion

Because the garnishment court's rulings on Insurer's motions to intervene and to set aside the judgment were void, Insurer's appeal with respect to those claims is dismissed. This Court affirms the remainder of the garnishment court's judgment as modified.

_____
GEORGE W. DRAPER III, JUDGE

Fischer, Stith and Russell, JJ., concur; Wilson, J., concurs in result in separate opinion filed; Breckenridge, C.J., concurs in opinion of Wilson, J.



# SUPREME COURT OF MISSOURI
## en banc

FRANKLIN ALLEN,                   )
                                     )
              Respondent,      )
                                     )
v.                                 )      No. SC95358
                                     )
WAYNE BRYERS,             )
              Defendant,       )
                                     )
ATAIN SPECIALTY INSURANCE     )
COMPANY,                     )
                                     )
              Appellant.       )

## OPINION CONCURRING IN RESULT

Insurer was denied an opportunity to litigate coverage here, but it has only itself to blame.  As the tortured history described in the majority opinion shows, Insurer had three separate chances to litigate coverage.  In the end, however, it abandoned all three.

Insurer could have intervened as a matter of right in the underlying tort suit.  It made a motion to that effect, but the trial court overruled that motion.  Insurer had an opportunity to challenge that ruling by filing an appeal once the trial court entered its final judgment in the underlying tort suit, but it failed to do so.

The Insurer could have relied upon the trial court's ruling that it had no interest in the underlying tort suit that would be impaired or impeded if it were not granted intervention, and litigated coverage in a separate action for declaratory judgment. Again, Insurer started down this road – filing two such suits, one in federal court and one in state court – but it abandoned both suits by dismissing them before a judgment on the merits could be entered.

Accordingly, because of the unique facts of this case, I concur in the result reached in the majority opinion.

_____
Paul C. Wilson