

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD78861 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | September 13, 2016 |
| PETE WRIGHT, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable David M. Byrn, Judge

Before Division Two:  Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Pete Wright ("Wright") appeals from an order denying a Rule 74.06(b)(3) motion that sought to set aside an earlier order denying Wright's section 547.037 motion for release from prison following DNA testing.[1]  Wright's Rule 74.06(b)(3) motion claimed the order denying his motion for release was irregular because the trial court did not follow procedures specified by section 547.037.  Because Wright's appeal is not taken from a writing that is denominated as a "judgment," his appeal is dismissed.

---

[1]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

## Factual and Procedural Background

On November 22, 1988, the trial court entered a judgment convicting Wright of forcible sodomy and felonious restraint. He was sentenced to 25 years and 5 years of incarceration, respectively, with the terms to run consecutively.

On April 25, 2011, Wright was granted post-conviction DNA testing pursuant section 547.035.[2] Wright's counsel[3] and the State reached an agreement regarding the DNA testing, which was accepted by the court pursuant to an order issued on August 3, 2011. The agreement required testing of Caucasian hairs recovered from Wright's clothing; Negroid hairs recovered from the victim's clothing and underwear; cuttings of material from the victim's clothing; the victim's pubic hair combings and pubic hair standards; and the victim's blood standard. The agreement also indicated that Wright would provide a buccal swab reference sample. The parties agreed that the testing would be performed in an agreed upon sequence, and that results would be reported by the testing company before testing of subsequent items would begin.

Wright received a letter from his attorney's office dated January 19, 2012, indicating that hairs were going to be subjected to DNA testing before the victim's clothing. That same letter indicated that "[s]o far, testing has been completed on one of the hairs collected from your shirt," and "[t]he testing shows that the hair *did not* come from the victim." At

---

[2]The court's order granting DNA testing was entered in Case No. 01CV-206799, the case number assigned to Wright's motion seeking postconviction DNA testing pursuant to section 547.035, although the motion should have been filed in the underlying criminal case, Case No. 16CR-87005014, pursuant to section 547.035.1.

[3]Wright was being represented by attorneys working with The Innocence Project in New York and by attorneys working with the Midwest Innocence Project.

Wright's trial, an expert had testified that the hair recovered from Wright's shirt "matched the victim's head hair standard." [Tr. 157]

The next information in the record regarding the DNA testing is a report from the testing laboratory dated May 22, 2012.[4] The report noted: (i) that one hair found on Wright's shirt *could not* be excluded as belonging to Wright, and that another hair found on Wright's shirt *could* be excluded as belonging to Wright; (ii) that a hair found on Wright's shorts *could* be excluded as belonging to Wright; and (iii) that a hair found on the victim's skirt *could* be excluded as belonging to both Wright and the victim. Summarized, one hair found on Wright might belong to Wright, two hairs found on Wright did not belong to Wright, and a hair found on the victim did not belong to either the victim or Wright. The same report noted that a hair found on the victim's panties had not yet been processed.

On April 9, 2013, the testing laboratory issued another report regarding testing on the hair that was found on the victim's panties, and on DNA extract from the hair.[5] The report found that no mitochondrial DNA results could be obtained from the extract; that the hair itself was consistent with the DNA profile of the victim; and that Wright was excluded as the contributor of the hair. In summary, testing on the hair found on the victim's panties showed that the hair possibly belonged to the victim, but did not belong to Wright. At Wright's trial, the same expert who testified about the hair on Wright's shirt also testified that the hair found on the victim's panties "matched [Wright's] head hair." [Tr. 161]

---

[4]The May 22, 2012 report references a February 3, 2012 report that is not a part of the record.
[5]The report references the hair with the same "code" assigned the hair found on the victim's panties in the report dated May 22, 2012.

3

In summary, DNA testing on the hairs produced results that did not connect Wright with the victim, and that were inconsistent with the expert witness testimony at trial regarding one hair found on Wright's shirt and regarding the hair found on the victim's panties.[6]

There are no other reports from the DNA testing laboratory in the record. However, it appears that after concluding the DNA testing on hair samples, DNA testing proceeded to the victim's clothing.[7]

On December 19, 2013, Wright's counsel filed a motion to close the case. The motion stated:

> Today's sophisticated state-of-the-art DNA technology makes it possible to test clothing for potential contact or "touch" DNA. Therefore, among other items, [the testing laboratory] tested several cuttings from the victim's underwear and skirt.
>
> On November 18, 2013, the parties received verbal results that [the testing laboratory] was able to generate a consistent male genetic profile from Y-STR DNA testing of the clothing cuttings. [Wright] could not be excluded from the samples tested.[8] . . . A copy of the letter sent to the Court after receiving these results is attached hereto as Exhibit A.

---

[6]The trial transcript indicates that the expert testimony connecting a hair found on the victim as Wright's and a hair found on Wright as the victim's was not the only evidence connecting Wright to the assault on the victim. Among other things, the jury also heard from the victim who identified Wright as her attacker.

[7]We surmise that the DNA testing proceeded to the clothing because the DNA testing of the hair samples did not connect Wright to the victim. The parties' agreement about DNA testing had anticipated sequencing the testing, presumably until a result linked Wright to the victim, at which point testing would not proceed.

[8]According to the motion, more discriminating STR DNA testing was then attempted, but "did not yield a male profile suitable for comparison."

4

Because these results were not consistent with innocence, Wright's counsel sought to close the section 547.035 DNA testing case. On December 19, 2013, the trial court sustained Wright's counsel's motion, and ordered Wright's DNA testing case closed.[9]

On March 11, 2014, Wright initiated a new civil action assigned Case No. 1416-CV05938 by filing a *pro se* motion seeking to vacate his convictions based on newly discovered evidence. The motion referenced the earlier DNA testing, and characterized it as having exonerated Wright. The motion also referred to a plethora of other alleged newly discovered evidence that Wright contended supported the vacation of his convictions. The court appointed the Midwest Innocence Project[10] to represent Wright. The Midwest Innocence Project filed a motion asking the court to reconsider the appointment because its mission is limited to representation of the wrongfully convicted, and earlier DNA testing sought on Wright's behalf "d[id] not support his claim of innocence." The Court subsequently dismissed Wright's motion for failure to state a claim on July 24, 2014, mooting the Midwest Innocence Project's motion to reconsider.

On September 9, 2014, Wright filed a motion in the instant case for release from prison pursuant to section 547.037,[11] along with exhibits and suggestions in support. On September 18, 2014, the trial court entered an order denying the motion, noting that

---

[9]The court's order closing Wright's DNA case was filed in both Case No. 01CV-206799 and Case No. 16CR-87005014.

The record does not reflect whether Wright's counsel had consulted with Wright about closing his section 547.035 postconviction DNA testing case, a question that is not relevant to the resolution of this appeal.

[10]Attorneys working with the Midwest Innocence Project had served as local counsel for the attorneys working with the New York Innocence Project in connection with Wright's efforts to secure DNA testing pursuant to section 547.035.

[11]Section 547.037.1 provides that a motion for release from custody may be filed if the DNA testing authorized by section 547.035 demonstrates innocence.

5

Wright's previously pursued DNA testing pursuant to section 547.035 had been closed at the request of Wright's counsel because the DNA test results did not support Wright's claim of innocence.

On December 8, 2014, Wright filed a second motion in the instant case requesting his release from prison pursuant to section 547.037, along with various exhibits and suggestions in support. The motion was essentially identical to the motion Wright filed in September 2014. On January 23, 2015, the trial court again entered an order denying the motion, noting that Wright's DNA testing case pursuant to section 547.035 had been closed at the request of Wright's counsel because DNA test results did not support Wright's claim of innocence. Wright appealed. On March 10, 2015, Wright's appeal was dismissed by this court because Wright failed to pay the required filing fee. Our mandate was issued on March 25, 2015.

On March 23, 2015, Wright filed a Rule 74.06(b)(3) motion in the instant case, requesting relief from the January 23, 2015 order.[12] Wright asserted that the January 23, 2015 order was irregular because the court did not require the State to file a response to his section 547.037 motion pursuant to section 547.037.2 and .4; did not use a preponderance of the evidence standard to deny his section 547.037 motion pursuant to section 547.037.4;

---

[12]The January 23, 2015 order was not denominated a judgment or decree, raising a question about its finality for purposes of appeal. *See* Rule 74.01(a); *Mercer v. State*, No. SD33779, 2015 WL 9481403, *2-3 (Mo. App. S.D. Dec. 29, 2015) (holding the docket entry denying a request for DNA testing pursuant to section 547.035 was not denominated a judgment, and therefore was not appealable), *transferred to the Missouri Supreme Court pursuant to Rule 83.03*, SC95451. We question, therefore, whether Rule 74.06(b) was even available to Wright as the Rule is limited by its terms to seeking relief "from a final judgment or order." We need not resolve either issue in this appeal.

6

and did not issue written findings of fact and conclusions of law pursuant to section 547.037.6.

On May 26, 2015, the trial court entered an order denying Wright's section 74.06(b)(3) motion.

Wright appeals.

## Standard of Review

"[W]e review the circuit court's ruling on a motion to set aside a judgment under Rule 74.06 for an abuse of discretion." *Kerth v. Polestar Entm't*, 325 S.W.3d 373, 378 (Mo. App. E.D. 2010) (citing *In re Marriage of Hendrix*, 183 S.W.3d 582, 587 (Mo. banc 2006)).

## Analysis

Wright raises two points on appeal. In Point One, Wright argues that the trial court erred in denying his Rule 74.06(b)(3) motion because the court's January 23, 2015 order was irregular in that it was entered without following the procedures described by section 547.037. In Point Two, Wright alleges that the trial court erred in denying his Rule 74.06(b)(3) motion because the court's January 23, 2015 order was irregular in that the court failed to use a preponderance of the evidence standard of proof in denying Wright's section 547.037 motion.

Before reaching the merits, we must address our authority to entertain Wright's appeal. "Barring statutory exception, an appeal can only be taken from a final judgment." *Johnson v. State*, 470 S.W.3d 1, 4 (Mo. App. W.D. 2015) (citing section 512.020). Section 512.020(5) provides in pertinent part:

7

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any . . . [f]inal judgment in the case or from any special order after final judgment in the cause . . . .

"[T]his Court must determine, *sua sponte*, if there is a final judgment." *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012). "A final judgment is a prerequisite to appellate review." *Id.*

Rule 74.01(a) provides that "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." The May 26, 2015 order from which this appeal is taken is denominated "order." Because the May 26, 2015 order is not denominated "judgment" or "decree," it "does not constitute a final 'judgment' for purposes of appeal." *Basta v. Kansas City Power & Light Co.*, 410 S.W.3d 743, 746 (Mo. App. W.D. 2013). As such, this appeal must be dismissed. *Id.* at 748; *Ndegwa*, 371 S.W.3d at 802.

Wright's appeal is not spared by a claim that the May 26, 2015 order is a "special order after final judgment." Section 512.020(5). A "special order" within the meaning of section 512.020(5) refers to "orders in special proceedings attacking or aiding the enforcement of the judgment after it has become final in the action in which it was rendered." *State ex rel. Westmoreland v. O'Bannon*, 87 S.W.3d 31, 34 (Mo. App. W.D. 2002) (quotation omitted). "The phrase 'contemplates that a judgment has become final and that one of the parties is attempting to enforce the judgment or to attack the enforcement of the judgment.'" *Id.* (quoting *GUI, Inc. v. Adams*, 978 S.W.2d 515, 517 (Mo. App. W.D. 1998)). Though a Rule 74.06(b) motion is an attack on a judgment that

has become final, and thus falls technically within the broad definition of a "special order," special orders are not exempt from Rule 74.01(a). Stated another way, an order from which an appeal lies still must be denominated "judgment" or "decree" in order to be appealable.[13] Rule 74.01(a) (defining "judgment" as "a decree and any order from which an appeal lies").[14]

Our conclusion is consistent with the decision reached in *State v. Callies*, 389 S.W.3d 249 (Mo. App. E.D. 2012). In *Callies*, a surety appealed from an order denying the surety's Rule 74.06(b) motion to set aside a judgment of bond forfeiture. *Id.* at 251. The Eastern District found that "[t]he independent nature of a Rule 74.06 proceeding requires that a new final judgment be entered in that proceeding" to invoke the statutory authority to appeal pursuant to section 512.020(5). *Id.* at 252 (citing *Lake Osage Condo. Ass'n v. Prewitt*, 179 S.W.3d 331, 335 (Mo. App. S.D. 2005) (addressing the requirement that denial of a motion to set aside a default judgment must be denominated as a "judgment" to be final for purposes of appeal). Because the denial of the surety's Rule 74.06(b) motion was not denominated as a "judgment," the appeal was dismissed. *Id.*

Because the May 26, 2015 order denying Wright's Rule 74.06(b) motion is not denominated as a judgment, Wright's appeal must be dismissed.

---

[13]However, mere designation of a "special order" as a judgment won't ensure its appealability if it is not truly a "special order." *Basta*, 410 S.W.3d at 746 (holding that although post-judgment order awarding costs may be a "special order" under section 512.020(5), where the order awarding costs "follows a judgment that is not final for purposes of appeal, it does not constitute an 'appealable special order [ ] pursuant to [s]ection 512.020'") (quoting *A.L. v. Peeler*, 969 S.W.2d 262, 265 (Mo. App. E.D. 1998)).

[14]An exception to this rule has been recognized for orders denying a Rule 24.035 or Rule 29.15 motion. *State v. Reber*, 976 S.W.2d 450, 451 (Mo. banc 1998) (holding that an appeal can be taken from an order denying a Rule 24.035 or Rule 29.15 motion even though the order is not denominated a "judgment"); *Johnson*, 470 S.W.3d at 4; *Sittner v. State*, 405 S.W.3d 635, 637 (Mo. App. E.D. 2013).

**Conclusion**

Wright's appeal is dismissed.

_____
Cynthia L. Martin, Judge

All concur