Tracy Lynn SHERMAN, Appellant,

v.

Michael F. KAPLAN, M.D., and Missouri Professionals Mutual-Physicians Professional Indemnity Association (MPM-PPIA), Respondents.

WD 79718

Missouri Court of Appeals,
Western District.

OPINION FILED: March 14, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

See also, 2017 WL 967031.

Douglas Ponder and Jaclyn M. Zimmerman, St. Louis, MO, Attorneys for Appellant.

Mariam Decker, St. Louis, MO, Attorney for Respondent Kaplan.

Hamp Ford and Jill R. Jackson, Columbia, MO, Attorneys for Respondent MPM-PPIA.

Before Division Three: Karen King Mitchell, Presiding Judge, and Victor C. Howard and Gary D. Witt, Judges

Karen King Mitchell, Presiding Judge

Tracy Sherman (Patient) appeals the trial court's grant of Missouri Professionals Mutual-Physicians Professional Indemnity Association's (Insurer's) motion to intervene and set aside a judgment rendered in Patient's underlying medical malpractice lawsuit against Michael Kaplan (Doctor). Patient argues that the trial court lacked jurisdiction to grant intervention to Insurer, as the court's original judgment had already become final at the time it issued its ruling. For separate reasons, both parties argue that we lack appellate jurisdiction and must dismiss this appeal. But because a court's ruling on a Rule 74.06(b) motion is appealable, and because the trial court's rulings below were erroneous, we reverse.

## Background

On April 18, 2014, Patient obtained an abdominoplasty (commonly known as a "tummy tuck") with Doctor as the surgeon and Christine Bell-Kaplan (Doctor's Wife) as Doctor's assistant. Shortly thereafter, Patient developed an infection and other complications, prompting her to file a lawsuit on July 15, 2014, against Doctor, Doctor's Wife, Doctor's practice, and the hospital where the surgery was performed. The petition alleged three counts: (1) general negligence against Doctor's Wife and Doctor's practice; (2) medical malpractice against Doctor and Doctor's practice; and (3) medical malpractice against the hospital.

Doctor had an insurance policy with Insurer for professional liability coverage; accordingly, Insurer hired a law firm to defend Doctor in Patient's lawsuit. Counsel retained by Insurer filed an answer to Patient's petition on behalf of both Doctor and Doctor's Wife and then engaged in a brief period of discovery. (The hospital was represented by separate counsel.) On January 22, 2015, counsel for both the hospital and Doctor and Wife filed motions to dismiss on the ground that Patient had failed to file a healthcare affidavit as required by § 538.225.[1] On January 28, 2015, Patient sought leave to file a First Amended Peti-

---

1. All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the 2013 Cumulative Supplement, unless otherwise noted. Section 538.225.1 states:

   In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

   Subsection 6 provides that, "[i]f the plaintiff or h[er] attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice." § 538.225.6.

tion, purportedly adding a count of fraud under the Missouri Merchandising Practices Act (MMPA), based upon Doctor and Doctor's Wife misrepresenting Doctor's Wife to be a licensed Physician's Assistant.[2] This request, however, was never ruled upon and no amended petition containing a claim under the MMPA was ever filed.

On April 16, 2015, the trial court granted the motions to dismiss, without prejudice, as they pertained to Doctor and Doctor's practice but denied the motions as to Doctor's Wife and the hospital. On April 21, 2015, the parties stipulated to dismissal of the hospital with prejudice from the lawsuit, leaving only Count I of the original petition, alleging general negligence against Doctor's Wife.

On July 7, 2015, Insurer sent Doctor a letter, advising that, as a result of the court's dismissals, only Doctor's Wife remained a defendant in the lawsuit and, because she did not qualify as an "insured person" under Doctor's policy, Insurer "must therefore deny coverage, both indemnity and defense and will provide no further benefits or payment of legal representation for the claim against [Doctor's Wife]."

On July 8, 2015, Patient again sought leave to file a first amended petition, again alleging violation of the MMPA. On July 29, 2015, Insurer sent Doctor a second letter, indicating that it was in receipt of Patient's First Amended Petition, setting forth two causes of action: (1) general neg-

ligence against Doctor's Wife; and (2) violation of the MMPA.[3] The letter acknowledged that, "[w]hile the general statement of facts that relate to all counts of the petition refer to what may be considered under the ... policy as a **Medical Incident**, the petition fails to allege a breach of the standard of care in rendering **professional services** against you." The letter further indicated that Doctor's policy precluded Insurer's liability for any willful, fraudulent, or intentionally wrongful activity; the violation of any statute imposing attorney's fees; and any liability based upon the insured's guarantee or warranty of the results of professional services or products. The letter concluded that, "[b]ased on the information contained in [Patient's] First Amended Petition for Damages, the policy provisions [and exclusions], [Insurer] must deny coverage, both defense and indemnity in this matter." Because Doctor was scheduled to be deposed in the pending lawsuit, following receipt of the letter, Doctor and Doctor's Wife retained their own counsel.

On August 5, 2015, counsel for Doctor and Doctor's Wife sent a demand letter to Insurer. On August 12, 2015, Insurer responded to the demand letter, indicating that—as referenced in prior communications (specifically the letters of July 7 and July 29, 2015)—Insurer was "unable to provide defense and indemnity to [Doctor] and [Doctor's Wife]." Insurer reiterated that there was no coverage available for Doctor's Wife, as she was not insured by

---

2. The motion requesting leave to file the first amended petition to add a count under the MMPA presented in the Supplemental Legal File indicates that the proposed amended petition was attached but never filed. The amended petition immediately following the request for leave, however, appears to be an amended petition that was actually filed later in the case, and it does not include any claim under the MMPA.

3. It appears that Patient considered a variety of amendments to her original petition and, unfortunately, titled them all "First Amended Petition." Because the record on appeal does not contain each of the various attempted amendments, we cannot discern for certain which First Amended Petition is referenced at any given time. This appears to have caused some confusion to Insurer as well.

the policy, and there was no coverage for Doctor's alleged violation of the MMPA because of various policy exclusions.

In light of Insurer's August 12, 2015 response to the demand letter, on August 24, 2015, Patient, Doctor, and Doctor's Wife entered into a proposed settlement agreement pursuant to § 537.065,[4] whereby Patient agreed to dismiss all claims against Doctor's Wife, Doctor consented to the filing of an amended petition premised on medical malpractice, Doctor expressly waived the affidavit requirement of § 538.225, and Doctor agreed to stipulate to a judgment in Patient's favor up to the full $500,000 policy limit provided by Insurer. In accordance with the proposed agreement, on September 22, 2015, Patient filed a motion seeking leave to file a first amended petition, reasserting a claim of medical malpractice against Doctor and Doctor's practice.

On September 28, 2015, the trial court granted Patient leave to file her First Amended Petition (reasserting medical malpractice), allowed Patient to dismiss her claims against Doctor's Wife, and held a hearing on the proposed § 537.065 settlement agreement. Both Doctor and Doctor's Wife were present at the hearing and represented by their own retained counsel.

At the hearing, Patient testified regarding the surgery, post-surgical complications, and damages related to her claim. Neither Doctor nor Doctor's Wife offered any evidence. Patient offered the court a proposed consent judgment including damages up to the full policy amount of $500,000, which the court accepted and entered the same date.

Following the September 28, 2015 judgment, no appeal was taken, nor were any authorized post-trial motions filed.

On October 29, 2015 (thirty-one days after entry of the judgment), Patient filed a separate garnishment action against Insurer, under § 379.200.[5] On December 4, 2015, Insurer filed a motion in the original medical malpractice action, seeking leave to intervene as a matter of right under Rule 52.12(a)[6] and to set aside the September 28, 2015 judgment under Rule 74.06(b),[7] arguing that the judgment was void on principles of res judicata, lack of good faith, and failure to join Insurer as a necessary party. The court held a hearing on Insurer's motion on December 21, 2015, and May 2, 2016. Thereafter, the court entered a "final ruling and order and judgment" granting Insurer leave to intervene, declaring the September 28, 2015 judg-

---

**4.** "Section 537.065, RSMo 2000, allows a claimant and a tortfeasor to contract to limit recovery *to specified assets or insurance coverage.*" *Allen v. Bryers,* 512 S.W.3d 17, 25 (Mo. banc 2016).

**5.** Section 379.200 provides:

Upon the recovery of a final judgment against any person ... by any person ... for loss or damage on account of bodily injury or death ... if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.

**6.** All rule citations are to the Missouri Supreme Court Rules (2016), unless otherwise noted.

**7.** Rule 74.06(b) allows a court to set aside a final judgment if "the judgment is void."

ment void, and setting it aside. Patient appeals.

## Jurisdiction

■ Patient brings only one point on appeal; she argues that the trial court erred in granting Insurer's motion to intervene and set aside the September 28, 2015 judgment because the trial court lacked jurisdiction to allow intervention, as the September 28, 2015 judgment had already become final.[8] Curiously, both parties request that we dismiss this appeal for lack of appellate jurisdiction, though on different theories. Patient argues that, because the trial court lacked jurisdiction to issue its ruling, we likewise lack jurisdiction to address that ruling on appeal. *See, e.g., State v. Bryant*, 237 S.W.3d 603, 604-05 (Mo. App. S.D. 2007) (noting that an appellate court's "jurisdiction is derivative of the trial court['s jurisdiction]," and "[i]f 'the trial court lacked jurisdiction to entertain Appellant's motion, [then] this Court lacks jurisdiction over Appellant's appeal.'" (quoting *State v. Tyler*, 224 S.W.3d 89, 90-91 (Mo. App. W.D. 2007))). Insurer argues that we lack jurisdiction because the grant of a motion to intervene does not constitute a final, appealable judgment. *See, e.g., Comm'n For Educ. Equal. v. State*, 294 S.W.3d 477, 486 n.17 (Mo. banc 2009) ("The order permitting intervention ... was not a final order from which Plaintiffs could have appealed ....").

■ Neither party, however, seems to recognize that the actual judgment from which Patient has appealed is the grant of Insurer's motion to set aside the September 28, 2015 judgment under Rule 74.06(b). "A trial court's ruling on a Rule 74.06(b) motion is in the nature of an independent proceeding and is appealable." *Bate v. Greenwich Ins. Co.*, 464 S.W.3d 515, 517 (Mo. banc 2015). The court's ruling granting Insurer the right to intervene was a necessary component of its judgment granting the Rule 74.06(b) motion. And, while the ruling on a motion to intervene, alone, is interlocutory, once a final judgment is rendered in a case, the propriety of a court's ruling on a motion to intervene is a proper subject for appeal. *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 399-401 (Mo. banc 2016) (holding that § 512.020 did not provide a right of immediate appeal based upon a ruling on a motion to intervene; instead, a party's "only opportunity for appellate review of that decision is to appeal from the trial court's final judgment"). Section 512.020(5) grants a party the right to appeal "from any special order after final judgment in the cause." "[A] Rule 74.06(b) motion is an attack on a judgment that has become final, and thus falls technically within the broad definition of a 'special order'" under § 512.020(5). *State v. Wright*, 499 S.W.3d 361, 366 (Mo. App. W.D. 2016). Accordingly, Patient has appealed from a final judgment; thus Insurer's argument is incorrect.

■ As to Patient's argument, even if the trial court lacked jurisdiction to grant Insurer's motion to intervene, the trial court had jurisdiction to rule on a Rule

---

**8.** Insurer filed a motion to strike Patient's Reply Brief in this appeal on the ground that Patient allegedly raised new claims for the first time therein. Specifically, Insurer argued that Patient's opening brief never challenged the trial court's ruling on Insurer's motion to intervene and set aside the September 28, 2015 judgment. Patient's Point Relied On states, verbatim: "The Trial Court erred in granting [Insurer] intervention because the Trial Court lacked jurisdiction to grant [Insurer] intervention in that a judgment disposing of all claims in the case was entered on September 28, 2015, and that judgment became final thirty days later as no after-trial motions were filed." Insurer's Motion to Strike is denied.

74.06(b) motion. And, as the trial court's grant of that motion is the judgment from which Patient appeals, we need not consider Patient's derivative jurisdiction theory.[9]

### Standard of Review

■ Having concluded that we have jurisdiction to address the merits of the trial court's judgment on Insurer's Rule 74.06(b) motion, we now address the standard of review. "Normally, a court's action under Rule 74.06(b) is reviewed for abuse of discretion." *Bate*, 464 S.W.3d at 517. But, whether a judgment is void under Rule 74.06(b) is a question of law and "is subject to de novo review." *Id.* Regarding intervention, an appellate court "will affirm a trial court's decision concerning intervention as a matter of right under Rule 52.12(a) unless there is no substantial evidence to support that decision, it is against the weight of the evidence, or it erroneously declares or applies the law." *Conoco-Phillips*, 493 S.W.3d at 403.

### Analysis

The crux of Patient's appeal is that the trial court lacked jurisdiction to grant Insurer's motion to intervene, and, had the trial court not committed that error, it would not have been able to grant Insurer's motion to set aside the September 28, 2015 judgment, as such a motion could be made by only a party to that judgment.

Thus, we will address the propriety of intervention first.

### A. Insurer had no right to intervene in the medical malpractice case.

"Rule 52.12(a) governs intervention as a matter of right." *Allen v. Bryers*, 512 S.W.3d 17, 27–28 (Mo. banc 2016).

> In the absence of a statute conferring an unconditional right to intervene, Rule 52.12(a)(2) requires an entity seeking to intervene as a matter of right to file a *timely* motion and demonstrate: "(1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest."

*Id.* (quoting Rule 52.12(a)(2)) (emphasis added).

■ Insurer's motion in this case was filed on December 4, 2015—sixty-seven days after the trial court entered the September 28, 2015 judgment. "Rule 75.01 limits the circuit court's control over a judgment to thirty days after a judgment is entered, provided no authorized after-trial motions are filed." *Id.* "There is no dispute the underlying tort judgment was final[; [10]] none of the parties filed author-

---

9. In any event, it seems that Patient's derivative jurisdiction argument is incorrect. "While the language used in some of the cases is to the effect that where the trial court had no jurisdiction, the appellate court has none[, t]he better practice is to make clear that the appellate court has jurisdiction of the appeal but [cannot] consider that appeal on its merits." *In re Estate of Shaw*, 256 S.W.3d 72, 77 (Mo. banc 2008) (quoting *Shepler v. Shepler*, 348 S.W.2d 607, 609 (Mo. App. 1961)). "Indeed, were it not so, an appellate court would not have the ability to adjudicate whether a judgment is invalid because entered by a trial court when it did not have jurisdiction. The

effect would be to leave the invalid judgment intact." *Id.* "Appellate courts inherently have supervisory authority to confine a trial court to its jurisdiction." *Id.* "Moreover, orders and decrees that are void, and not merely erroneous, will be considered colorable and subject to being reviewed and reversed on appeal." *Id.*

10. Insurer argues that the September 28, 2015 judgment could not have been final because it was void. But this argument is somewhat tautological insofar as Insurer sought to set aside the judgment as void under Rule 74.06(b), which applies only to a "final judg-

ized after-trial motions, and none of the parties sought an appeal within the time frame contemplated by Rule 75.01." *Id.* A motion to intervene filed after a judgment has become final is untimely. *Id.*

■■■■■ "After the expiration of the 30 days provided by Rule 75.01, the trial court is divested of jurisdiction, unless *a party* timely files an authorized after-trial motion." *Id.* at 28 (quoting *Spicer v. Donald N. Spicer Revocable Living Trust,* 336 S.W.3d 466, 468-69 (Mo. banc 2011)). "Following divestiture, any attempt by the trial court to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void." *Id.* (quoting *Spicer,* 336 S.W.3d at 469). "After the underlying tort judgment became final, the circuit court no longer had the authority to rule upon Insurer's ... motion to intervene. Accordingly, any ruling on Insurer's untimely, unauthorized motion was void." *Id.*

Insurer argues that "[i]ntervention after a judgment ha[s] become final has been permitted in Missouri," citing *Meyer v. Meyer,* 842 S.W.2d 184 (Mo. App. E.D. 1992) (en banc). In *Meyer,* the Eastern District of this court held that "[p]ost-judgment intervention is allowed under certain circumstances and the courts look at two factors. The first is whether substantial justice requires intervention, and the second is whether existing parties to the case will be prejudiced if intervention is permitted." *Id.* at 189. Though Insurer is correct that *Meyer* involved a post-finality request for intervention, its ruling was somewhat at odds with existing law. The

*Meyer* court, in stating the above proposition, relied on a 1991 Missouri Supreme Court case: *Frost v. Liberty Mutual Insurance Company,* 813 S.W.2d 302 (Mo. banc 1991). Though *Frost* involved a post-judgment motion to intervene, the motion at issue was filed and ruled upon "within the time prescribed by Rule 75.01." *Frost,* 813 S.W.2d at 303. While *Frost* supports the notion that intervention may be permitted post-judgment, it does not stand for the proposition that a court is authorized to grant a motion to intervene under Rule 52.12(a) after a judgment has become final. Indeed, it would seem that any open question regarding *Frost's* holding in that regard has been expressly foreclosed by the Missouri Supreme Court's recent decision in *Allen.*

It is worth noting that *Meyer* involved a question of permissive intervention under Rule 52.12(b), while both *Frost* and *Allen* were directed to claims of intervention as a matter of right under Rule 52.12(a), just as Insurer has claimed. Though we are skeptical that this distinction makes *any* difference to the issue at hand, in the interest of fully addressing the matter, it is sufficient to note that, even if Insurer's motion had been timely or if *Meyer* (following the decision in *Allen*) can still be read to support any right to post-finality intervention, Insurer had no right to intervene in the underlying tort matter.[11]

■■■■■ "To intervene as a matter of right under Rule 52.12(a)(2), the [would-be] intervenor must show: (1) an interest in the subject matter; (2) disposition of the action may impede its ability to protect that in-

---

ment." If the judgment was not final, Rule 74.06(b) could not have applied. Thus, in seeking relief under Rule 74.06(b), Insurer necessarily conceded that the September 28, 2015 judgment had become final.

11. One argument advanced by Insurer to support its Rule 74.06(b) motion was that the judgment was void as a result of failing to join an indispensable party (Insurer). For the reasons identified above, that argument is meritless.

terest; and (3) the applicant's interest is not adequately represented by the existing parties." *Griffitts v. Campbell*, 426 S.W.3d 684, 687 (Mo. App. S.D. 2014) (quoting *In re Clarkson Kehrs Mill Transp. Dev. Dist.*, 308 S.W.3d 748, 752 (Mo. App. E.D. 2010)).

"The [alleged] interest must be a 'direct and immediate claim to, and having its origin in, the demand made or proceeds sought or prayed by one of the parties to the original action.'" *Borgard v. Integrated Nat'l Life Ins. Co.*, 954 S.W.2d 532, 535 (Mo. App. E.D. 1997) (quoting *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 479 (Mo. App. W.D. 1992)). To be sufficiently "direct and immediate," the would-be intervenor must show that he or she "will either gain or lose by the *direct* operation of the judgment that may be rendered therein." *Id.* (emphasis added).

"The liability of an insurer as potential indemnitor of the judgment debtor does not constitute a direct interest in such a judgment so as to implicate intervention as of right in that action." *Whitehead*, 844 S.W.2d at 479. "That is because the insurer does not either 'gain or lose from the direct operation of that judgment.'" *Id.* (quoting *State ex rel. Farmers Mut. Auto Ins. Co. v. Weber*, 364 Mo. 1159, 273 S.W.2d 318, 321 (1954)). Instead, "the insurer has a forum by declaratory judgment action or in the action to compel indemnity for the judgment that affords the insurer full scope to protect its interests against the contention of coverage, and hence liability for the judgment." *Id.* at 480. In other words, "[i]n the third party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder." *Charles v. Consumers Ins.*, 371 S.W.3d 892, 897-98 (Mo. App. W.D. 2012). If either

party to the insurance contract breaches in such a way that results in the insurer not providing a defense to the insured during the underlying lawsuit, that matter may be raised only in the proper forum, *i.e.*, a declaratory judgment action or a subsequent garnishment action.

In sum, the trial court here misapplied the law in granting Insurer's motion to intervene because (1) Insurer's motion was untimely; (2) the trial court lacked jurisdiction to rule on the motion because the underlying tort judgment had become final; and (3) Insurer had no right to intervene, even if intervention had been timely sought. Thus, the trial court's ruling granting Insurer's motion to intervene is hereby reversed.

**B. The trial court lacked authority to declare the September 28, 2015 judgment void.**

Because Insurer had no right to intervene, Insurer was not properly made a party in the underlying tort action. "[T]he provisions of Rule 74.06(b) are limited to parties." *Allen*, 512 S.W.3d at 29. Because "Insurer was not a 'party' entitled to bring a Rule 74.06(b) motion[, t]he circuit court was without authority to grant any relief on that motion." *Id.* Accordingly, its decision on the motion to set aside is reversed. The original September 28, 2015 judgment is reinstated.

**Conclusion**

The trial court lacked jurisdiction to grant Insurer's motion to intervene after the underlying tort judgment became final. And because Insurer was not a party to the action, the court lacked authority to grant Insurer's Rule 74.06(b) motion to set aside the underlying tort judgment. The trial court's judgment is reversed and the

September 28, 2015 judgment is reinstated.

Victor C. Howard and Gary D. Witt, Judges, concur.