

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| LESLIE M. HENSON, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LESLIE S. HENSON, | ) ) ) ) ) ) |
| Respondent, | ) ) |
| v. | ) ) ) ) | WD85158

OPINION FILED:
April 18, 2023 |
| MEROB LOGISTICS, LLC, and TEDROS S. LAKEW, | ) ) ) |
| Respondents, and | ) ) ) |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable John M. Torrence, Judge**

**Before Division Two:** Edward R. Ardini, Jr., Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Zurich American Insurance Company appeals the denial of its motions to

intervene and vacate the judgment in a wrongful death action filed by Leslie M. Henson

against Merob Logistics, LLC, and Tedros Lakew. Zurich raises nine points on appeal. In Points I-IV, Zurich argues that the denial of its motion to intervene violated Rule 52.12(a) in that § 537.065 provides a right to insurers to intervene (Point I) and Zurich had an interest in the litigation (Point II); Rule 52.12(b) insofar as there were common questions of law and fact or § 537.065 granted a conditional right to intervene (Point III); and Zurich's right to due process in that it was not given an opportunity to be heard on the underlying judgment for which it is now subject to garnishment (Point IV). In Points V-IX, Zurich argues that the trial court erred in denying Zurich's motion to modify or vacate the arbitration award for a variety of reasons. Finding no error, we affirm.

## Background

On December 6, 2019, Lakew was operating a tractor-trailer as part of his employment with Merob when he drove the tractor-trailer onto the right shoulder of a highway in Chase County, Kansas, and lost control of the vehicle. *Henson v. Merob Logistics, LLC*, 633 S.W.3d 838, 840 (Mo. App. W.D. 2021). The trailer, which had no lights, came to rest blocking the roadway. *Id*. Around 11:48 p.m., Leslie S. Henson (Decedent) struck the trailer while driving a passenger vehicle and died from his injuries six days later. *Id*.

At the time of the accident, both Lakew and Merob were insured by American Millennium Insurance Company (American) for the tractor portion of the tractor-trailer. *Id*. The trailer portion was owned by an affiliate of Amazon.com, Inc., and insured by Zurich through a commercial automobile insurance policy. *Id*.

2

On January 21, 2020, Decedent's son, Leslie M. Henson, was appointed Administrator of Decedent's estate. After the accident, American agreed to pay out its policy limits ($1,000,000) to Henson. Believing that Lakew and/or Merob may be insured under additional policies, Henson entered a non-execution agreement with Lakew and Merob, whereby Henson agreed that, in exchange for the policy limits paid by American, Henson would not levy execution against any personal assets of either Lakew or Merob other than liability insurance coverage available to either by any insurers other than American or any proceeds Lakew or Merob might recover from claims against insurers for failure to defend or settle claims against Lakew or Merob. Henson would file a wrongful death action against Lakew and Merob in Missouri, and Lakew and Merob agreed not to challenge either venue or personal jurisdiction, though they were otherwise free to answer with both admissions and denials as they saw fit. The agreement further provided for a distribution of the assets from the American policy to Decedent's children, and all parties agreed to file a joint motion with the court to approve the agreement and distribution.

The agreement also provided, "If investigation or discovery reveals additional potential insurance, Lakew and Merob and their personal counsel agree to tender their defense to that insurance company." And, if any additional insurer then rejected a request for an unconditional defense, "Lakew and Merob agree[d] to reject any defense under reservation and resolve Henson, Jr.'s claims through binding arbitration under the provisions of the Missouri Uniform Arbitration Act and the Federal Arbitration Act." The agreement also noted that Henson, Lakew, and Merob had negotiated "a separate

3

arbitration agreement that they agree[d] to execute if any additional insurance companies reject[ed] Lakew's and/or Merob's request for an unconditional defense of the claims."

Then, on April 13, 2020, Henson filed a wrongful death lawsuit against Lakew and Merob. On May 28, 2020, pursuant to a joint motion from the parties, the trial court approved the non-execution agreement and distribution of assets from the American policy. On June 23, 2020, counsel for Lakew and Merob sent a letter to Zurich and three other insurers, notifying them of the accident and the non-execution agreement and tendering the defense of Lakew and Merob to each insurer. The letter gave the insurers fourteen days from receipt of the letter to respond with an indication of whether they would provide a defense. Zurich received the letter on June 30, 2020, and, on July 6, 2020, Zurich sent Merob a letter acknowledging the claim had been filed but giving no indication as to whether Zurich intended to provide a defense.

On August 13, 2020, the previously negotiated arbitration agreement between Henson, Lakew, and Merob, wherein the parties agreed to submit their dispute to binding arbitration, was executed. On August 28, 2020, Lakew and Merob sent a second letter to Zurich, noting that, because Zurich did not respond to the prior communication with an agreement to defend, Lakew and Merob entered into binding arbitration. The letter further advised Zurich that the arbitration was scheduled for September 3, 2020, and that Zurich was invited to participate. Zurich chose not to attend, and, after the hearing, the arbitrator entered an award, finding Lakew negligent and 90% at fault, Merob vicariously liable for Lakew's negligence, and Decedent contributorily negligent and 10% at fault. The arbitrator awarded total damages to Henson in the amount of $11,071,647.82.

4

On September 18, 2020, Henson filed an unopposed motion to confirm the arbitration award. And, on September 23, 2020, Zurich filed its first motion to intervene. The very next day, the trial court entered an order confirming the arbitration award, which was followed a day later by Zurich's second motion to intervene and request to vacate the judgment. The trial court attempted to schedule case management conferences to address Zurich's motions, but Zurich filed an appeal in this court, challenging the judgment confirming the arbitration award. *Henson*, 633 S.W.3d at 842. On October 5, 2021, we dismissed the appeal for lack of a final judgment insofar as the motions to intervene had not been addressed, and we held that Zurich was not then an aggrieved party. *Id*. at 843.

On November 29, 2021, Zurich filed a supplemental motion on intervention, which the trial court denied on January 27, 2022. Zurich appeals.

## Analysis

Zurich raises nine points on appeal. The first four are directed at the trial court's denial of Zurich's motion to intervene, and the remaining five are directed at the trial court's denial of Zurich's motion to modify or vacate the arbitration award.

### I. Zurich lacked a right to intervene.

In Points I and II, Zurich claims that it had a right to intervene under Rule 52.12(a). We disagree. "We will affirm the trial court's decision denying intervention as a matter of right 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Britt v. Otto*, 577 S.W.3d 133, 139 (Mo. App. W.D. 2019) (quoting *Allen v. Bryers*, 512 S.W.3d 17, 28 (Mo. banc

5

2016)).  "[T]he decision to grant or deny the motion is one involving application of the law." *Id.* at 139-40 (quoting *BMO Harris Bank v. Hawes Tr. Invs., LLC*, 492 S.W.3d 607, 615 (Mo. App. W.D. 2016)).

Rule 52.12(a) provides two circumstances under which anyone who has timely applied "shall be permitted to intervene in an action":

> (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 52.12(a).[1]

The relevant version of § 537.065.2, provides:

> Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

Section 537.065.2 RSMo 2017.[2]

---

[1] All rule references are to the Missouri Supreme Court Rules (2021) unless otherwise noted.

[2] Zurich argues that we should apply the 2021 version of § 537.065, which provides greater rights for insurers under the agreements permitted therein, rather than the 2017 version.  We disagree.  Even if § 537.065 applies to the agreement in this case, the applicable version would be the one effective when the contract was executed because the 2021 version contains additional requirements not found in the 2017 version; thus, the parties could not enter into a contract "under this section" that included requirements that did not yet exist.  *See Desai v. Seneca Specialty Ins. Co.*, 581 S.W.3d 596, 601 (Mo. banc 2019) (holding that, where "contracts executed under the amended statute have new requirements to be effective compared with those executed under the [prior] statute[,] . . . the amended statute is not a continuation of the prior version

In Point I, Zurich argues that § 537.065.2 conferred upon it, as an insurer, an unconditional right to intervene in Henson's action below. Though § 537.065.2 does provide an insurer the right to intervene "in any pending lawsuit involving the claim for damages" within thirty days of receiving notice of an agreement entered into under § 537.065.1, the trial court below determined that § 537.065 did not apply to the agreement at issue in this matter. Specifically, the trial court determined, "Zurich has failed to establish that Missouri statutory law applied to the parties' nonexecution agreement. The Court finds that the requirements of section 537.065 do not apply to the agreement between an Oklahoma resident and two Texas residents regarding a vehicle crash that occurred in Kansas." Zurich has not challenged that determination on appeal.[3]

"Before a judgment may be reversed, an appellant must demonstrate that 'all of the reasons' the trial court relied on as supporting a challenged ruling in the judgment 'were wrong.'" *In re Wilma G. James Tr.*, 487 S.W.3d 37, 53 (Mo. App. S.D. 2016) (quoting *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 591 (Mo.

---

pursuant to section 1.120," and the parties "could not have 'entered into a contract' pursuant to [new] requirement[s] that w[ere] not yet law.").

[3] In fact, the sole reference Zurich makes is an isolated, conclusory statement in the argument portion of the brief that "Section 537.065.2 . . . undoubtedly applies to the non-execution agreement entered into by the parties," followed by a citation to a nonexistent provision of the applicable version of § 537.065. Though the applicable version of § 537.065 also indicates that it "shall apply to any covenant not to execute or any contract to limit recovery to specified assets, regardless of whether it is referred to as a contract under this section," § 537.065.3, it says nothing about whether § 537.065 applies to agreements between non-Missouri residents involving a crash occurring outside of Missouri. And, because Zurich has not raised a claim on appeal related to the applicability of § 537.065 under these circumstances, we need not decide whether the trial court's conclusion was correct.

App. W.D. 2009)). "Thus, the failure to challenge an alternative basis supporting the trial court's ruling 'is fatal to [the] appeal.'" *Id*. (quoting *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012)). Because Zurich did not challenge the trial court's determination that § 537.065 was inapplicable, Zurich cannot now rely on § 537.065 to support its claim that the court erred in denying its request to intervene as a matter of right under Rule 52.12(a)(1). Point I is denied.

In Point II, Zurich claims that it also had a right to intervene under Rule 52.12(a)(2) insofar as it had an interest in the underlying litigation, disposition of the litigation impaired its ability to protect that interest, and none of the existing parties adequately represented Zurich's interest. *See* Rule 52.12(a)(2) (identifying three requirements to intervene as a matter of right). As the proposed intervenor, Zurich bore the burden of proving all three assertions. *See Britt*, 577 S.W.3d at 142. If Zurich established all three requirements, its "right to intervene [wa]s absolute, and a trial court ha[d] no discretion to deny the motion." *Id*. But if any one of the requirements was not established, the trial court did not abuse its discretion in denying the motion to intervene. *Id*.

"Missouri courts have long held that '[t]he liability of an insurer as potential indemnitor of the judgment does not constitute a direct interest in such a judgment so as to implicate intervention as of right in that action.'" *Id*. (quoting *Sherman v. Kaplan*, 522 S.W.3d 318, 326 (Mo. App. W.D. 2017)). "Instead, 'the insurer has a forum by declaratory judgment action or in the action to compel indemnity for the judgment that affords the insurer full scope to protect its interests against the contention of coverage,

8

and hence liability for the judgment.'" *Id.* (quoting *Sherman*, 522 S.W.3d at 326). "In other words, '[i]n the third[-]party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder.'" *Id*. (quoting *Sherman*, 522 S.W.3d at 326).[4] Because Zurich's interest is limited to its contractual obligation as a potential indemnitor, it failed to prove the requisite interest for intervention as a matter of right under Rule 52.12(a)(2).[5] Point II is denied.

## II. The trial court did not err in denying Zurich permissive intervention.

In Point III, Zurich argues that the court erred in denying permissive intervention under Rule 52.12(b)(1) and (2). "We review the denial of permissive intervention under Rule 52.12(b) for abuse of discretion." *Britt*, 577 S.W.3d at 145. "A trial court abuses its

---

[4] "If either party to the insurance contract breaches in such a way that results in the insurer not providing a defense to the insured during the underlying lawsuit, that matter may be raised only in the proper forum, *i.e.*, a declaratory judgment action or a subsequent garnishment action." *Britt v. Otto*, 577 S.W.3d 133, 142 (Mo. App. W.D. 2019) (quoting *Sherman v. Kaplan*, 522 S.W.3d 318, 326 (Mo. App. W.D. 2017)).

[5] Zurich argues for the first time on appeal that, by giving insurers a right to intervene in § 537.065, the legislature necessarily intended to completely abrogate this well-settled law about the insurer's lack of direct interest in the action even when the entity attempting intervention does not comply with § 537.065. We need not reach this issue, as Zurich failed to preserve it by failing to raise it below. In any event, Zurich's argument seems at odds with the decisions in *Loveland v. Austin*, 626 S.W.3d 716 (Mo. App. E.D. 2021), *transfer denied* (Aug. 31, 2021); *Aguilar v. GEICO Cas. Co.*, 588 S.W.3d 195 (Mo. App. W.D. 2019); and *Britt*, 577 S.W.3d at 143; and with the general principle that, "[u]nless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid." *State ex rel. Brown v. III Invs., Inc.*, 80 S.W.3d 855, 860 (Mo. App. W.D. 2002) (quoting *In re Estate of Parker*, 25 S.W.3d 611, 614 (Mo. App. W.D. 2000)).

discretion when its decision is 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *Johnson v. State*, 366 S.W.3d 11, 21 (Mo. banc 2012)).

Rule 52.12(b) allows for permissive intervention, upon timely application, "(1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Rule 52.12(b). Zurich argues first that its objection to the arbitration award had common questions of law and fact with Henson's wrongful death petition and, alternatively, that § 537.065.2 provided Zurich with a conditional right to intervene. For the same reasons identified in response to Point I, *supra*, we reject Zurich's alternative argument that § 537.065.2 provided it with a conditional right to intervene. Because Zurich did not challenge the trial court's determination that § 537.065 was inapplicable, Zurich cannot now rely on § 537.065 to support its claim that the court erred in denying its request for permissive intervention under Rule 52.12(b).

With respect to Zurich's argument that its objection to the arbitration award had common questions of both law and fact with Henson's wrongful death petition and it was, therefore, entitled to permissive intervention, we disagree.

"[I]t is well established that 'an intervenor must accept the action pending *as he finds it at the time of intervention.*'" *Knight ex rel. Knight v. Knight*, 609 S.W.3d 813, 824 (Mo. App. W.D. 2020) (quoting *Martin v. Busch*, 360 S.W.3d 854, 858 n.5 (Mo. App. E.D. 2011)). At the time Zurich sought intervention, the parties had already

10

participated in a binding arbitration, and an award had already been entered; the parties were merely seeking confirmation of that award by the trial court. Thus, we do not ask whether Zurich's objection to the arbitration award had common questions of law and fact with Henson's *petition*; instead, we ask whether there were common questions with the motion requesting confirmation of the arbitration award, which was the "main action" pending at the time Zurich sought to intervene. There were not.

In its motion to intervene, Zurich argued that the arbitration award was "erroneous, collusive, invalid, and unenforceable," and further argued that it "was procured by undue means."[6] But the parties, themselves, jointly urged the court to confirm the award and none of the parties raised any challenge to the validity or enforceability of the award; thus, there were no common questions of law or fact between Zurich's request to intervene and the parties' joint motion to confirm the arbitration

---

[6] The underlying bases for Zurich's claim that the award is erroneous is that the award fails to comply with statutory damage caps under Kansas law, fails to credit the $1,000,000 paid out by American against the total award, improperly awards pre-crash and pre-death damages, and "improperly implicates Defendants' alleged coverage with Zurich." Zurich argues that the award was collusive because it was a product of the underlying non-execution agreement that Zurich contends was collusive. But "[t]he validity and/or enforceability of the [non-execution] contract is not an issue in [an] appeal" from the denial of requested intervention. *Britt*, 577 S.W.3d at 140 n.6.

Furthermore, "[t]he authorized grounds for vacating an [arbitration] award are limited, and do not include re-litigating the facts or legal issues determined by the award." *Id.* at 144. In any event, intervention "is not available to . . . litigate the coverage question in the [underlying] action, or to restore to [the insurer] the control of the defense it forfeited by the denial of coverage, or to impugn the fairness of the settlement agreement proceedings and judgment." *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 481 (Mo. App. W.D. 1992). "These are interests of liability properly litigable in an action for declaratory judgment, statutory garnishment, or even by the insured for reimbursement." *Id.*

11

award.  *See Aguilar v. GEICO Cas. Co.*, 588 S.W.3d 195, 201-02 (Mo. App. W.D. 2019) ("Because the circuit court here was asked to confirm the award, and no grounds were urged by the parties to the arbitration for vacating, modifying, or correcting the award, neither the validity nor the enforceability of the award was at issue.").  Under § 435.400,[7] the court was *required* to confirm the award, unless *a party* raised grounds urging the court to vacate, modify, or correct the award.  *Hart v. Metzger*, 834 S.W.2d 236, 238 (Mo. App. E.D. 1992).  "And because no application was filed [by a party] to vacate the award for undue fraud, questions of law and fact pertaining to the circumstances under which the parties entered the agreement were similarly not at issue." *Aguilar*, 588 S.W.3d at 202.[8]

In Point IV, Zurich argues that it suffered a due process violation based on its alleged inability to be heard on the judgment for which it will be garnished.  For the same reasons discussed in footnote 6 in response to Point III, we reject Point IV.  Zurich plainly has the opportunity—and has capitalized on this opportunity—to be heard in both its declaratory judgment action currently pending in federal court and in the garnishment action filed by Henson below.  Thus, there is no due process violation.  For all of these reasons, Point III and IV are denied.

---

[7] Section 435.400 provides, "Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 435.405 and 435.410." § 435.400.

[8] Furthermore, Zurich was invited to attend the arbitration, but it declined to do so. And, "in denying permissive intervention, the trial court was entitled to consider that [the would-be intervenor] declined an invitation to participate in the arbitration proceeding." *Britt*, 577 S.W.3d at 145-46.

### III.  Zurich lacked standing to request the trial court modify or vacate the arbitration award.

In Points V-IX, Zurich raises a variety of rationales to support its claim that the trial court erred in denying Zurich's post-judgment request to modify or vacate the arbitration award.  But "[o]nly a party has standing to attempt to set aside or appeal from a judgment."  *F.W. Disposal S., LLC v. St. Louis Cnty. Council*, 266 S.W.3d 334, 338 (Mo. App. E.D. 2008).  "In order to be a party, a person 'must either be named as a party in the original pleadings, or be later added as a party by appropriate trial court orders.'"  *Id*. (quoting *Wieners v. Doe*, 165 S.W.3d 520, 522 (Mo. App. S.D. 2005)).  "Motions filed after judgment by strangers to the record present nothing for the court to rule on."  *Id*.

Here, because the trial court denied Zurich's request to intervene, Zurich remained a stranger to the action and, therefore, lacked standing to seek modification or vacation of the arbitration award.  Accordingly, the trial court did not err in denying Zurich's motion.

Points V-IX are denied.

### Conclusion

The trial court did not err in denying Zurich's request to intervene.  And, because Zurich was not a party, Zurich lacked standing to seek modification or vacation of the arbitration award; thus, the trial court did not err in denying Zurich's post-judgment motion to modify or vacate the award.  The trial court's judgment is affirmed.

_____
Karen King Mitchell, Judge

Edward R. Ardini, Jr., Presiding Judge, and Lisa White Hardwick, Judge, concur.

13